JOSEPH GENGLER, a Minor, by Mary E. Gengler, his Mother and Next Friend, Plaintiff-Appellant, v. NORMAN HERRINGTON, Defendant-Appellee (Rheem Manufacturing Company, Inc., *et al.*, Defendants).

Second District   No. 2—91—0045

Opinion filed September 20, 1991.

Meg E. Goblet, of Gooding & Goblet, of Aurora, for appellant.

Robert J. Baron, of Rooks, Pitts & Poust, of Joliet, Thomas P. Scherschel, of Querrey & Harrow, Ltd., of Geneva, and Michael Resis, of Querrey & Harrow, Ltd., of Chicago, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The minor plaintiff, Joseph Gengler, born February 5, 1986, appeals from a summary judgment entered in favor of the defendant, Norman Herrington, on October 11, 1990. The plaintiff's motion to reconsider the judgment was denied on December 12, 1990, and this timely appeal followed. The issue presented on appeal is whether, as a matter of law, the defendant breached a duty of care to the plaintiff. We affirm.

The plaintiff initially filed a negligence action on June 30, 1989. His cause of action stems from burns he sustained to his hands on March 2, 1988, when the hot water was turned on in the bathroom sink of his baby-sitter's apartment at 713 Sexton in Aurora, Illinois.

The defendant, Norman Herrington, was the lessor and owner of the building where the baby-sitter, Diane Moncrief, was a tenant. Marjorie Herrington was dismissed from the action apparently because she had no ownership interest in the property. Rheem Manufacturing and Robertshaw Controls were eventually dismissed from the action after separate settlement agreements were reached with the plaintiff.

The issue presented by the defendant's motion for summary judgment was whether the landlord breached a duty to protect the plaintiff, where there was evidence in support of the motion that he did not have actual or constructive knowledge or notice of a defect or dangerous condition existing on the rental premises so that injury to

the child would be reasonably foreseeable. (See, *e.g., Kostecki v. Pavlis* (1986), 140 Ill. App. 3d 176, 179; *Trotter v. Chicago Housing Authority* (1987), 163 Ill. App. 3d 398, 402.) In granting summary judgment for the defendant, the trial court found that there was no material question of fact regarding the (lack of) notice to the defendant or of his duty toward the plaintiff. We agree that, under the facts presented, granting summary judgment was proper.

The plaintiff's second amended complaint alleged, *inter alia,* that the defendant knew or should have known that the premises would be occupied by small children and that it was the duty of the defendant to insure that these premises were safe for use by children coming onto the premises, including the plaintiff. The complaint further averred that the defendant knew or should have known that the water heater was not capable of maintaining consistent water temperatures; that the heater provided tap water so hot as to be capable of causing severe burns and that the water heater allowed dangerously hot water to go to the bathroom sink; that he knew or should have known that the setting of the thermostat was erratic; that the defendant failed to inspect and maintain the hot water heater properly and to secure the basement common area where children played and where the heater was located; and that he failed to warn tenants of the dangers of hot tap water to small children or to provide a locking device for the water heater thermostat when he knew or should have known that it provided an unreasonably dangerous condition if tampered with.

The defendant's motion for summary judgment was supported by the depositions of Diane Moncrief and the defendant. Moncrief, the plaintiff's baby-sitter, testified that she was a month-to-month tenant of the defendant for a five-year period prior to the time of the occurrence. She lived there with her husband and three children. She was baby-sitting the plaintiff, who arrived at about 11 a.m. on March 2, 1988. She charged about a dollar per hour for this service. Also present in the apartment were her own three children: five-year-old Matthew, three-year-old Rachel, and one-year-old Stephanie. The incident occurred sometime between 12 and 12:30 p.m. Moncrief stated that she had never made any complaints to the defendant regarding the hot water heater and it seemed normal to her. She walked past it every time she did the laundry. When she first moved in, she checked the thermostat and put it on just above "warm." The "warm" setting was on one side of the dial, and the "hot" setting was on the other. She checked the setting from time to time. She did not remember looking at the setting prior to the incident, but just after the accident,

she saw that it was set all the way on "hot." Neither she nor anyone else ever fixed the heater during the time she had rented the apartment; she acknowledged that the defendant would make repairs when asked to do so.

Before the plaintiff was dropped off that day, Moncrief was doing her laundry. She also used the dishwasher and had taken a shower that morning. She did not notice any abnormal changes in the temperature. The heater was located in the basement, which was accessible from a stairway leading from her kitchen. When asked who would have turned the setting to "hot," Moncrief surmised that it might have been one of her children, who were playing in the basement area that morning while she was doing the laundry. They started to have lunch about 12 noon, and Stephanie cried and became "crabby," so Moncrief took her and cleaned her off with a washcloth. She asked her five-year-old son, Matthew, to take Rachel and the plaintiff to get cleaned up in the bathroom for nap time. The plaintiff, approaching his third birthday, was three feet tall at most and was able to walk, but could not talk very much.

The bathroom had a basin set in a cabinet about three feet high. There was a two-step child's step stool for the children to reach the sink. Moncrief heard the water running in the bathroom for a couple of minutes and then heard plaintiff crying and Matthew yelling, "Mom, come quick." When she reached the bathroom, she saw Rachel sitting on the toilet "going to the bathroom" and Matthew standing on the step stool. Joe was on the corner of the counter of the sink on the left side near the hot water, and the sink was full. The room was full of steam, and plaintiff had his hands up shaking them and complaining that they hurt, saying, "Hurt, owie." Both sides of his hands were red and blistered. The water had been turned on all the way, and there was a little splatter because it was coming out with such force. Moncrief told her children to go take their nap and notified a relative of the plaintiff.

In the past, the plaintiff had never gone into the bathroom without her, nor had he been left in the charge of Matthew. Moncrief had been baby-sitting the plaintiff for six to nine months. Matthew was capable of turning on the water without assistance, but she did not know who turned the water on. When she asked Matthew how the accident occurred, he maintained that he was not there and would not give any answers regarding what had happened. Matthew and Rachel had always used cold water in the past to wash. Moncrief had warned them about not using the hot water, and there had not been any prob-

lem, although, on a couple of occasions, Matthew had turned the hot water up so that there was steam rising from it.

Moncrief knew that Matthew was not telling the truth when he said he was not in the bathroom at the time of the injury. She surmised that Matthew must have helped the plaintiff get on top of the sink because the plaintiff was not a very rambunctious child who readily climbed. She thought the plaintiff was strong enough to have turned on the water by himself.

A couple of days after the accident, Moncrief tested the water temperature with a candy thermometer and obtained a reading of 120 degrees. On one occasion a couple of years prior to the accident, Moncrief noticed that the water in the shower got hot enough to turn the skin red when the toilet in the bathroom was flushed. It then became the standing rule that when someone else was taking a shower, the toilet stool should not be flushed. She did not believe it was necessary to change the controls on the water heater. She believed that the reason the water got so hot on the day of the accident was that her daughter Rachel had flushed the stool and the temperature was set all the way on "hot."

The basement area, where there were two water heaters, one for the Moncriefs and one for the other tenant, was accessible to the other tenant by an outside door. Moncrief saw no reason why the other tenant would have changed the controls on the Moncriefs' water heater. She assumed that the temperature control had been turned up that day, but she did not do it and neither did her husband. She also assumed that, because she was in the basement with her children doing her laundry that morning, one of her children had turned the control.

The defendant's deposition testimony showed that he inherited the residence in 1977 from his mother, who had owned it since 1949. There was an upper and a lower apartment unit, and the unfinished basement contained a furnace and a water heater for each unit. The defendant had been renting the property to the Moncriefs for about five years, and he was aware that Diane was baby-sitting. The last time he saw the water heaters before the incident, the thermostat was set in the middle, and he had never seen it on any other setting. The setting was a matter of choice for the tenant. He never attempted to enclose the heater or put a locking device on the heater control. He never told the tenants how to set the heater. He was aware that there was a written manufacturer's notice on the heater stating that the heater was equipped with an automatic gas shutoff system actuated by high water temperature.

The defendant never gave the tenant any written instructions regarding the temperature control or any manufacturer's manual. He was aware that the heater had a blow-off valve that was activated when the water reached a certain temperature to prevent scalding hot water from coming from the tank. He did not clean the thermostat valve or recalibrate the thermostat or adjust the pilot burner, but he did relight the pilot light when the tenants asked him to do so. He and the tenants had access to the basement area. The upstairs tenant had a key to the outside door of the basement.

The defendant had never received any complaints about the water temperature being inconsistent with the water temperature setting, nor had he received any complaints at all about the water heaters or the temperature of the water. He was not aware that hotter water would come from the shower if the toilet were flushed in the bathroom.

▮▮▮ We now consider whether, as a matter of law, the defendant landlord could be held to have breached a duty of care owed to the plaintiff. (See *Keller v. Mols* (1984), 129 Ill. App. 3d 208, 210.) A landlord who retains control of a portion of the premises leased to a tenant has the duty, as the party in control, to use ordinary care in maintaining that part of the premises in a reasonably safe condition. (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 220.) Conversely, a landlord is not liable for injuries caused by a defective condition on the premises leased to a tenant and under the tenant's control. (*Rowe*, 125 Ill. 2d at 220-21; see *Wright v. Mr. Quick, Inc.* (1985), 109 Ill. 2d 236, 238.) This is true whether it is the tenant or the tenant's invitee who is injured, as a guest or invitee stands in the same position as the tenant and has no greater rights against the landlord. (*Housh v. Swanson* (1990), 203 Ill. App. 3d 377, 383.) An invitee assumes all normal, obvious or ordinary risks attendant on the use of the premises. *Dargie v. East End Bolders Club* (1952), 346 Ill. App. 480.

▮▮ ▮ Even where a landlord retains control of part of the premises, he is not liable for injuries that are not reasonably foreseeable; he is not an absolute insurer for all injuries occurring on his premises. (*Trotter v. Chicago Housing Authority* (1987), 163 Ill. App. 3d 398, 402.) In order to show that the defendant breached his duty of maintaining the premises under his control in a reasonably safe condition, it is necessary to establish that he had actual or constructive knowledge of the existence of a defective or dangerous condition. *Kostecki v. Pavlis* (1986), 140 Ill. App. 3d 176, 179; see also *Garcia v. Jiminez* (1989), 184 Ill. App. 3d 107, 112.

In the deposition testimony of both the defendant and the tenant, Diane Moncrief, there is no evidence that the defendant ever had knowledge that the water in the tenants' apartment could become so hot as to cause injury to an unsuspecting child. The Moncriefs had used the hot water over a five-year period without complaining to the defendant, and the temperature setting was within their control. Diane Moncrief had been using the hot water all that morning just before the accident and observed nothing unusual about the water. Even if it could be said that the defendant exercised some control over the water heater itself, the accident occurred in the apartment, an area under the control of the tenant. The defendant made repairs when called upon to do so by his tenants. We believe it would be unfair to hold the defendant liable for a potentially defective condition of the hot water system when he had no reason to suspect that there was a defect and he was not advised of a possible defective condition by those in the best position to know of it.

While we have found no Illinois case precisely on point, the facts of this case are analogous to those in *King v. Wiesel* (1941), 67 R.I. 182, 21 A.2d 262. There, hot water was supplied to all bathrooms of an apartment house from a central heating system in the control of the landlords, and the plaintiff tenant was scalded when there was a sudden rush of hot water and steam from the shower. Apparently, neither the plaintiff nor any other tenant had complained of any defect or want of repair in the shower or fixture. The testimony of the plaintiff's expert admitted that the system was not inherently unsafe or dangerous, and he pointed to no particular part that was worn or in need of repair which could have given notice to the defendants of the allegedly unsafe condition. The court held that a verdict for the landlords was properly directed where the evidence did not support the allegation that the shower bath and fixtures were in a bad, unsafe or dangerous condition. The court also determined that the doctrine of *res ipsa loquitur* was inapplicable, since the mixing of the hot and cold water was not exclusively in the control of the defendants and required the intervention of the plaintiff in operating the faucets.

Likewise in this case, we observe that the plaintiff presented no competent evidence that there was an actual defect in the water heater. There is no expert testimony in the record. The water from the hot water faucet was hot—as it was intended to be. (See *Dargie*, 346 Ill. App. 3d 480 (defendant owner did not breach duty of care to unattended plaintiff child burned by exposed, hot radiator in rest room).) The plaintiff merely speculates that there was a defect in the water heater, and the children's activities in the bathroom are open to

conjecture as well. It is true that the water was hot enough to scald the plaintiff. It is unfortunate when a child is injured while playing with household fixtures. However, the primary responsibility for preventing injury to very young children must be placed on the parents or on those who are entrusted with the children's supervision. See *Strode v. Becker* (1990), 206 Ill. App. 3d 398, 405.

Virtually every household appliance or fixture may present a danger to a two- or three-year-old child who is left unsupervised by his parents or caretaker, and in such cases, under proper circumstances, a landowner may be relieved of the duty to warn the child or remove the dangerous instrumentality whose danger is apparent. (See *Strode*, 206 Ill. App. 3d at 405.) Under the conditions present here, the law should not impose a duty on the landlord to *insure* the safety of a toddler who is left free to roam and give vent to his curiosity. (See *Strode*, 206 Ill. App. 3d at 407 (Steigmann, J., dissenting); see also *Bonamie v. Welsh* (1981), 95 Ill. App. 3d 349 (property owner not absolute insurer against all injuries occurring on his premises).) Since the plaintiff has failed to show that the defendant breached a duty of care to him, the trial court properly granted summary judgment. See *Keller*, 129 Ill. App. 3d at 210.

The judgment of the circuit court is affirmed.

Affirmed.

WOODWARD and INGLIS, JJ., concur.