**Timothy GALARNYK and Toni Galarnyk, Plaintiffs– Appellants,**

v.

**HOSTMARK MANAGEMENT, INC., Defendant–Appellee.**

No. 01–3934.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 2003.

Decided Jan. 16, 2003.

Before FLAUM, Chief Judge, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

### Order

This slip-and-fall case came to federal court on the defendant's notice of removal. Because the opening brief on appeal represented that the plaintiffs are "residents" of Wisconsin but did not indicate their citizenship, and appellee represented that this statement was "complete and correct" (which it is not; "residence" may differ from domicile, see *Gilbert v. David*, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360 (1915); *Steigleder v. McQuesten*, 198 U.S. 141, 25 S.Ct. 616, 49 L.Ed. 986 (1905)), we called for supplemental memoranda. Hostmark's response shows that the notice of removal identified the parties' citizenships, so that federal jurisdiction is secure. We turn to the merits.

Timothy Galarnyk fell in the bathroom of the Holiday Inn Mart Plaza in Chicago, converting gravitational energy to kinetic energy with such effectiveness that he punched a hole in the wall. Galarnyk did not seek medical attention at the time but says that he began to experience excruciating pain while driving home. His theory of recovery is that the hotel negligently failed to ensure that a bath mat was properly secured, and that it gave way when he stepped into the tub. Galarnyk testified in his deposition that he did not notice a mat before entering the tub, but that after the fall he saw a mat that was loose on one end. Belia Valenciano, the attendant who had cleaned the room before Galarnyk checked in, testified that she inspected bath mats as part of her routine, that she did so in this case, and that the mat was properly secured. Dan Sapp, who inspected the room after the fall, testified that the mat *still* was properly secured "except for a little small inch of the tub." The hotel's theory is that the mat had nothing to do with the fall–and that, if it was loose (as Galarnyk says) that this was a consequence rather than a cause of the accident. The district court granted summary judgment to the hotel. It held that, even

taking all evidence in the light most favorable to Galarnyk, a reasonable trier of fact could not conclude that the hotel knew, or had cause to suspect, that a problem had cropped up with the mat in this room; and if, despite taking appropriate precautions, the hotel lacked knowledge that its equipment had begun to fail, it could not be liable under Illinois law. See 2001 U.S. Dist. LEXIS 11060 (N.D.Ill. July 30, 2001), relying on *Gengler v. Herrington,* 219 Ill. App.3d 6, 11, 161 Ill.Dec. 864, 579 N.E.2d 412 (2d Dist.1991), and *Burke v. Grillo,* 227 Ill.App.3d 9, 18, 169 Ill.Dec. 45, 590 N.E.2d 964 (2d Dist.1992).

 Galarnyk insists that this is beside the point, because both the hotel and its insurance carrier admitted liability by offering to pay his medical expenses. Such an offer, in the nature of a settlement proposal (or perhaps just a gesture to maintain goodwill), differs from an admission of liability, for damages in tort often greatly exceed medical expenses. Federal law makes this clear: "Evidence of furnishing or offering or promising to pay medical, hospital, or similar expenses occasioned by an injury is not admissible to prove liability for the injury." Fed. R.Evid. 409. The offers were accompanied by expressions of regret and dismay, which likewise differ from admissions of liability. Particular statements may be admissible, as admissions, to the extent that the speakers had knowledge of the facts pertinent to liability, but Galarnyk does not use them in this way; the speakers lacked personal knowledge. None of the statements constitutes an admission of liability that pretermits further inquiry.

Because Galarnyk concedes that he did not inspect (or even notice the existence of) a bath mat before stepping into the tub, there is no evidence directly contradicting Valenciano's testimony that the mat was properly secured when Galarnyk arrived in the room. Galarnyk's testimony would permit a jury to find that after the fall the mat was loose, but that leaves two questions unanswered: first, was this a cause rather than an effect of the fall?; second, would a prudent hotelier have known that the mat needed additional attention?

Although he bears the risk of non-persuasion (often called the burden of proof), Galarnyk does not tackle either question. Whether a loose mat caused the fall, or the fall loosened the mat, is up in the air. An engineer or some other expert might have been able to calculate whether a person of Galarnyk's size could have caused a properly-secured mat to become loose, but neither side offered any evidence on this subject–either via an expert witness or via a citation to the available literature. The National Kitchen and Bath Association maintains standards for bath mats (and other ways of reducing the chance of falls in the bathroom), but Galarnyk has not offered any evidence suggesting that the Holiday Inn was out of compliance with these standards. For all this record reveals, the hotel used exactly the mats, glue, and inspection routine that the best engineering practice supports.

 What Galarnyk does contend is that the hotel took precautions against falls (by installing mats) and against the risk that mats would become loose (requiring room attendants to check daily and conducting other spot checks). These precautions–plus the fact that the hotel replaces about 3 mats in an average month (and 22 mats in November 1998, the month of the accident)–show that the hotel knew of the risk he faced, Galarnyk insists. But no one is liable *for taking precautions.* The hotel's practices do not show that anyone was, or should have been, aware that *this* mat was loose; nor, for that matter, does the record imply that a loose mat is more risky than a bare tub. A guest who knows that a tub has a mat may rely on its presence and thus be endan-

gered by a slip-prone mat; but a guest such as Galarnyk who is unaware of the mat's existence should assume that the bottom surface of the tub is slippery. It may be tortious to take inadequate precautions against preventable falls, but again nothing in the record suggests that the hotel's precautions were inadequate either by the standards of the trade or under a direct application of the Hand Formula. See *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir.1947). See also *McCarty v. Pheasant Run, Inc.*, 826 F.2d 1554, 1556 (7th Cir.1987) (concluding that Illinois follows this approach); *Archie v. Racine*, 847 F.2d 1211, 1219 (7th Cir.1988) (en banc) (treating *Carroll Towing* as the generic definition of negligence). All a jury could find on this record is that Galarnyk fell, and that after the fall part of the mat was loose. That is not enough to support a conclusion that the hotel was negligent.

AFFIRMED