*John P. Cooney, Jr., Haslam, Arnold & Sumpter,* for complainant.

*Edward M. Brennan, James E. L. Smith,* for Borghild Cole.

MARGARET KING *vs.* MORRIS WIESEL *et ux.*

JULY 15, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This action of trespass on the case was brought by a tenant against her landlords to recover damages for injuries sustained by her through their alleged negligence in connection with the maintenance of a shower bath and the fixtures thereof. Upon conclusion of the evidence at the trial in the superior court, the trial justice granted defendants' motion for a directed verdict. The case is before us on plaintiff's bill of exceptions to that ruling and to another ruling, excluding certain testimony.

The undisputed evidence shows the following facts. Plaintiff and her sister rented and occupied an apartment of three rooms and bath in a house of fifteen apartments owned by the defendants. Hot water was supplied to all bathrooms by the defendants from a central heating system in their control. Plaintiff's bathroom included a bathtub and overhead shower, both of which were supplied with hot and cold water. The hot and cold water pipes were separate from each other and the water from each passed into and through the head of the shower; and each pipe had its own shower control valve or cock, variously referred to by witnesses as "taps" or "faucets". There was no mixing valve between the boiler and shower head, the mixing being done manually by the user.

It also appeared in evidence that the circulating hot water was heated by submerging a coil in the water of the boiler which, in turn, was heated by an oil burner. The system included an "aquastat", which was not effective in nonheating periods, and a check valve and by-pass which was installed in or near the coil to control the temperature of the hot water. The system was an approved and common type of installation at the time the apartment house was built in 1930; and identical systems were in use at the time of trial, according to the undisputed evidence, in at least 60 per cent of the apartment houses in Providence. Plaintiff had become a tenant in June 1937 and had actually used the shower in question at least every other day from that time and had never noticed or complained about anything being defective with the shower, or fixtures, or temperature of the hot water.

The plaintiff testified that on the morning of March 19, 1938 she had taken a tub bath and thereafter, as was her custom, had stood up in the tub to finish with a shower. She first turned on the cold water faucet and then turned on the hot water faucet until the stream of the shower was "luke-warm". She then stood under the shower for about one or two minutes when she was scalded or burned by a sudden rush of "hot water and steam", as she testified. The plaintiff's sister found her in a faint and shut off the water.

The plaintiff also introduced evidence by an expert, who had examined the system at the time of trial. No changes or repairs had been made in the hot water system or shower between the time of accident and the time of trial. His testimony disclosed no break, weakness, or want of repair in the boiler, coil, by-pass, or shower fixture as installed. He testified, in substance, that there was no storage tank in this system, and that by the installation of such a tank "the changes in the system would not be so abrupt, so radical; there would be a reservoir of supply on hand of nearly a constant temperature". However, he admitted that the existing system was an approved type and in common use, although there was a device then available that would "auto-

matically balance the hot water and cold water pressures". This device was not in this system but it appears from the evidence that it was not available when the house was built. He characterized the hot water system as not the best available and one that he would disapprove.

By her first exception, plaintiff contends that the court erred in excluding the following question: "Mr. Sias, applying your experience as an engineer and your observation in various types of buildings like this in which you have either worked or seen systems in operation, I will ask you whether or not every reasonable precaution for the safety of the tenants with reference to the possibility of excessively hot water coming out of the various outlets in the apartments had been taken in the apartment which is under discussion?"

This question called for an expert opinion and is defective in form and substance. It is too broad and indefinite; fails to state or refer to facts in evidence as a basis for the opinion of the witness; suggests, in its present form, an erroneous conception of the defendants' duty or the standard of care; and apparently invades the province of the jury more completely than any opinion evidence that appears in the cases relied upon by the plaintiff to support her contention. The plaintiff's first exception is therefore overruled.

The plaintiff's second exception is to the granting of the defendant's motion for a directed verdict. The plaintiff does not deny the absence of any evidence to support her first count based on defendants' alleged failure to make repairs as agreed. But she contends substantially that there was evidence, though meager, to require the submission of the issues to the jury under the second count; and finally, that if not sustained upon that ground, the case called for the application of the doctrine of *res ipsa loquitur* under the third count. In our opinion, neither of these contentions can be sustained upon the declaration as filed and the evidence which appears in the case.

The second count charges, in substance, that the defendants carelessly and negligently "suffered the said shower bath and the fixtures thereof to remain in bad, unsafe and dangerous condition, all of which defects and conditions the defendants then and there and long before . . . had notice of or in the exercise of reasonable care should have known and repaired the same". There is no evidence, or reasonable inference therefrom, in the transcript before us, which supports the charge that the shower bath or any of its fixtures were in a bad, unsafe or dangerous condition. The undisputed evidence showed that plaintiff had used the same shower bath every other day from June 1937 to March 19, 1938 and had never noticed any defect in the operation of any fixture, and had never encountered any difficulty from excessive hot water; nor had she noticed any other allegedly dangerous or unsafe condition in connection with the shower or its fixture or the operation thereof. Admittedly she never complained of any defect or want of repair in the shower or fixture; nor had any other tenant complained of such a condition, or of excessive hot water.

The testimony of the plaintiff's expert admits that the system was not inherently unsafe or dangerous either at the time the apartment house was built or at the time of trial. He pointed out no particular part thereof that was worn or in need of repair or dangerous, which could possibly have been notice to the defendants of its alleged unsafe condition. He did testify that, in his opinion, the system was not then the best or most approved one, in view of new appliances available since its installation; but that was not evidence in proof of the pertinent allegation in the declaration. It was argued that the possible flushing of toilets in eight or ten other apartments at one time might affect the pressure or temperature, or both, of the hot water supply in plaintiff's shower bath. But we find no evidence that there was any such flushing.

It is true that the plaintiff testified that "hot water and *steam* came from the shower bath". (italics ours) If there

were no other evidence which made that testimony inherently improbable or physically impossible, there might be some force to plaintiff's contention. But undisputed testimony showed that the circulating water inside the submerged coil could never rise in temperature above that of the water in the boiler outside the coil; and that the temperature of the circulating water had probably risen no higher than to 160 or 170 degrees, even after a reasonably long period of heating by the boiler without much use of the hot water supply. There was admittedly no noise or hissing sound when it allegedly came from the shower. In these circumstances, it was physically impossible to have real steam in the coil or coming from the shower head since the undisputed testimony substantially showed it would remain hot *water* until reaching a temperature of 212 degrees. The only reasonable meaning of this evidence, in the light of the record as it stands, was that the plaintiff meant the vapor which comes from escaping hot water, popularly but unscientifically termed "steam".

This is confirmed by the plaintiff's expert who examined the entire system including the boiler, submerged coil, aquastat and by-pass, as well as the shower bath fixture. At no place did he testify, directly or by reasonable inference, that there was any break or worn portion of the coil or hot water pipe or fixture which would permit live steam from the boiler to enter into the hot water supply pipe or the shower fixture.

In the light of the undisputed testimony and physical facts, the expert's opinion as to the relative merits of different approved systems and their possibilities or effectiveness, not founded on facts in evidence, could hardly be substituted as proof of the allegation in the declaration that the shower bath and the fixtures thereof were in a "bad, unsafe and dangerous condition" as alleged; or that the defendants "had notice of or in the exercise of reasonable care should have known and repaired the same." The

plaintiff's contention under the second count, therefore, cannot be sustained.

The plaintiff finally contends that her case should have been presented to the jury because it called for the application of the doctrine of *res ipsa loquitur*. In our opinion, the evidence does not bring it within the special cases in which that doctrine is properly applied. At least one of the limitations placed upon the application of such doctrine, namely, exclusive control by defendants of the instrumentality, is absent from the instant case. See *Kilgore* v. *The Shepard Company*, 52 R. I. 151. The mixing of the hot and cold water to obtain a desirable temperature was not exclusively in the control of these defendants, but in the nature of things in evidence here required the manual intervention of and operation by the plaintiff of the hot and cold water "faucets". Nor does this case come within certain cases cited from other jurisdictions, with reference to mixing valves, because there was no such valve here provided by or under the control of the defendants.

Based upon the declaration as filed, and the evidence as presented, we are of the opinion that the trial justice was not in error in granting the defendants' motion for a directed verdict. The plaintiff's first three exceptions therefore are overruled.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict as directed.

*Taft & Beane,* for plaintiff.

*Henry M. Boss, Francis W. Conlan,* for defendants.