NOREEN WILSON, Plaintiff-Appellant, v. FRITZ MICHEL, Defendant-Appellee.

First District (6th Division)   No. 1—90—0773

Opinion filed December 13, 1991.—Modified on denial of rehearing January 24, 1992.

Leahy & Donovan, of Chicago (Tom Leahy and Leatrice S. Somogyi, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Norman J. Barry, Jr., and Michael A. Pollard, of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff sued defendant for negligence after she hired him to perform a sterilization procedure on her and she subsequently experienced the birth of a healthy child and three miscarriages. Following trial, the jury awarded plaintiff $160,000 for pain and suffering and $15,000 for disability and the court entered judgment in that amount. Subsequently the court granted defendant's timely motion for a new trial. This court then granted plaintiff's petition for leave to appeal pursuant to Supreme Court Rule 306 (134 Ill. 2d R. 306).

On appeal, plaintiff raises these issues: (1) was the jury's verdict excessive or was it fair, reasonable and amply supported by the evidence, (2) did plaintiff prove the required elements of *res ipsa loquitur* so as to entitle her to an appropriate *res ipsa loquitur* jury instruction, (3) was defendant's negligence the proximate cause of plaintiff's three subsequent miscarriages for which plaintiff claims damages, (4) were the comments of plaintiff's counsel during closing arguments relevant and supported by evidence and therefore not reversible error, and (5) was it reversible error for plaintiff's mental and emotional state to be considered by the jury?

Plaintiff, the mother of three, approached defendant doctor about a sterilization procedure because she did not want to have more children. Defendant recommended a tubal ligation, a procedure that would not be permanent but could be reversed to permit future pregnancies. On May 30, 1980, plaintiff underwent surgery in which defendant was to apply silastic rings to her fallopian tubes. Ten months later plaintiff became pregnant. Her son, Ernest, was born in December 1981. Thereafter plaintiff suffered miscarriages in January 1983, November 1983 and October 1988.

Plaintiff sued defendant in a two-count complaint, alleging medical malpractice based on negligence and *res ipsa loquitur*. Plaintiff's expert, Dr. John Freedom, testified that defendant failed to locate at least one fallopian tube, in part because he chose to do a laparoscopy instead of a laparotomy. In a laparotomy procedure, an incision is made in the abdominal wall and the fallopian tubes are physically lifted out of the body and silastic rings applied. Whereas in the laparoscopy procedure, the internal organs are viewed through a telescope at the end of a tube that is inserted through the abdominal wall and the silastic rings are applied internally and without incision. Plaintiff's expert theorized that defendant failed to apply a silastic ring to one of the fallopian tubes and instead applied it somewhere else in the uterine cavity, perhaps on a ligament located in the same area.

On cross-examination plaintiff's expert conceded that "recannulization"—the process where a fallopian tube repairs itself, permitting pregnancy—can and does occur even though the surgeon performing the tubal ligation does not deviate from the standard of care. Defendant's expert, Dr. Marcia Siegel, also testified about the types of procedures available to accomplish a tubal ligation. She testified that later pregnancy is an anticipated risk of any tubal ligation because recannulization can occur even when the surgery is performed properly. The defendant testified, after having his memory refreshed by his office file, that he warned plaintiff of her future risk of pregnancy.

Following a five-day trial, the jury found in favor of plaintiff and returned a verdict of $175,000. Defendant filed a post-trial motion for a new trial, citing errors by the trial judge, inappropriate remarks by plaintiff's counsel and improper instructions to the jury.

In granting the motion for a new trial, the trial judge stated:

"This Court concludes that the jury's verdict cannot be allowed to stand. It was the result of passion and prejudice in the amount of the verdict. It was also the result of error by this Court, in allowing the jury to be instructed in the matter of *res*

*ipsa loquitur* when, under *Clay v. Brodski,* it is clear that the voluntary acts of plaintiff in engaging in sexual intercourse after she knew she was not sterile, caused the subsequent injury of the three miscarriages. For the same reason, this Court admits error in not barring these three miscarriages under the settled law on proximate cause. The words, 'Acting at the same time' found in IPI 15.01, which was given, have particular application here.

Additionally, the language of plaintiff's counsel both during the trial and in his final argument, went beyond the boundary of what is permitted even under liberal standards of advocacy. There were too many instances of improper appeals to the emotions of the jury. All too often, the question of plaintiff's emotional and mental state was raised by her attorney. This had no business in the case, as plaintiff's third complaint did not claim any emotional or mental distress.''

The trial court further stated that if its ruling was reversed, set aside or vacated, "the Court conditionally rules, B, that the compensatory verdict in favor of the plaintiff and against the defendant is to be set aside, or C, judgment is to be entered in favor of the defendant and against the plaintiff, or D, judgment is to be entered in favor of the defendant and against the plaintiff on all counts, or E, an order [of] remittitur to reduce the verdict of $175,000 in favor of the plaintiff, to the sum of $43,750.''

Plaintiff was granted leave to appeal the trial court's order pursuant to Supreme Court Rule 306.

Plaintiff's overriding premise in her argument is that a jury's verdict should be given great deference and that it should not be disturbed unless all reasonable persons would agree that the verdict was obviously excessive. (*Zueck v. Nokomis* (1987), 160 Ill. App. 3d 140, 513 N.E.2d 125.) Defendant's basic premise is that a trial court's decision to grant a motion for a new trial is within the sound discretion of the trial court and should not be disturbed unless a clear abuse of discretion appears in the record and plaintiff has proven that abuse of discretion. *McKenzie v. Romeiser* (1990), 205 Ill. App. 3d 830, 833, 563 N.E.2d 837.

Initially we consider whether defendant's negligence was the proximate cause of plaintiff's three miscarriages for which plaintiff is entitled to damages.

■ Proximate cause is amply defined by the court in *Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 493 N.E.2d 372:

"A proximate cause is one which produces the injury through a natural and continuous sequence of events unbroken by any effective intervening cause. [Citation.] If the negligence charged does nothing more than furnish a condition which made the injury possible and that condition causes an injury by the subsequent independent [action of another], the creation of that condition is not the proximate cause of the injury. [Citation.] The subsequent independent act becomes the effective intervening cause which breaks the causal connection, and itself becomes the proximate cause." *Kemp*, 143 Ill. App. 3d at 361.

█ The existence of proximate cause is for the trier of fact to determine (*Batteast v. Wyeth Laboratories, Inc.* (1988), 172 Ill. App. 3d 114, 128, 526 N.E.2d 428, *rev'd on other grounds* (1990), 137 Ill. 2d 175, 560 N.E.2d 315), but foreseeability is a question of law. *Parvin v. Sill* (1985), 138 Ill. App. 3d 325, 486 N.E.2d 262.

Plaintiff argues that defendant is responsible for all "natural and probable causes of his action." (*Gould v. Spreitzer* (1986), 145 Ill. App. 3d 938, 496 N.E.2d 307.) The intervention of a new and independent cause does not relieve a wrongdoer of responsibility for his negligence if the intervening cause could have reasonably been anticipated. *Culhane v. Ludford* (1986), 148 Ill. App. 3d 763, 499 N.E.2d 686.

Plaintiff argues that proximate cause need not be the only cause or the last or the nearest cause of the injury. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury. *Batteast*, 172 Ill. App. 3d at 128.

Plaintiff contends that the three miscarriages were proximately caused by defendant's act, "even though the failed sterilization must be combined with the act of intercourse to result in the injury." Plaintiff argues that the defendant should have reasonably foreseen that plaintiff would continue to have intercourse. Plaintiff argues that defendant should have known that, based on her "history," plaintiff would continue to engage in sexual intercourse even while the possibility of conception existed. She cites no pages in the record to support this statement. Plaintiff adds that she had no obligation to abstain from intimate relations or to undergo further surgery in order to mitigate damages and that defendant is liable for the foreseeable consequences of the failed medical procedure.

Defendant contends that it was error for the jury to hear and consider any evidence regarding the miscarriages. Defendant argues that the reasoning in *Kemp* applies here since plaintiff's voluntary participation in intercourse after she knew she was not sterile was her own subsequent independent act. Defendant argues that the trial court

correctly found that the jury was improperly instructed to consider damages with regard to the miscarriages. To accept plaintiff's reasoning, he argues, would make defendant liable each and every time plaintiff conceives for an unlimited period of time into the future.

Defendant cites *Watson v. Byerly Aviation, Inc.* (1972), 7 Ill. App. 3d 662, 288 N.E.2d 233, for its discussion of proximate cause and foreseeable consequences from subsequent conduct. In *Watson*, the court found a fuel distributor employee's action of filling the wrong tank was not the proximate cause of plaintiff's injuries when plaintiff started the engines of his plane after being informed that fuel was leaking from the wing. The *Watson* court held: "It is our conclusion that the consequences of the defendant's conduct in filling the wrong tank terminated at least at the point where the pilot and co-pilot had been fully advised of what had happened. The decision which they made thereafter was an independent decision not subject to the control of the defendant or foreseeable as to consequences of the linemen's conduct." *Watson*, 7 Ill. App. 3d at 669.

Defendant argues that *Watson* is analogous here because in both cases the plaintiffs were injured when they created an intervening act though fully aware of the potential consequences. Defendant contends that the trial court ruled correctly when it found that it improperly instructed the jury on proximate cause.

■ We find the trial court properly acknowledged error in the jury instructions. Evidence of the fact of the miscarriages should not have been considered by the jury. Plaintiff sought a sterilization procedure from defendant, received one and then became pregnant and delivered a child. At that point, plaintiff was fully aware of her fertile condition. We find her decision then to have intercourse was a subsequent intervening act not proximately caused by the doctor's negligence, and therefore, the evidence of the later miscarriages and jury instructions related thereto were improperly submitted to the jury.

Next we consider whether the plaintiff established the necessary elements of *res ipsa loquitur* that would have entitled her to an appropriate *res ipsa loquitur* jury instruction. Since we have already determined that it was improper to instruct the jury with regard to the miscarriages, we will only consider whether the trial court properly instructed the jury on *res ipsa loquitur* with regard to the pregnancy and birth of Ernest.

Under *res ipsa loquitur,* the facts of the occurrence constitute a *prima facie* showing of the defendant's negligence provided that the plaintiff first has established (1) the occurrence does not usually happen in the absence of negligence, (2) the defendant was in exclusive

control of the instrumentality that caused the injury and (3) circumstances indicated that the injury was not due to any voluntary act or neglect on the part of the plaintiff. *Spidle v. Steward* (1980), 79 Ill. 2d 1, 5, 402 N.E.2d 216; *Barkei v. Delnor Hospital* (1988), 176 Ill. App. 3d 681, 688, 531 N.E.2d 413.

■ The doctrine of *res ipsa loquitur* is not a separate legal theory but rather is a type of circumstantial evidence which permits the trier of fact to infer negligence when the precise cause of the injury is not known by the plaintiff. *Briones v. Mobil Oil Corp.* (1986), 150 Ill. App. 3d 41, 45, 501 N.E.2d 821.

A plaintiff bears the burden of proving the elements of *res ipsa loquitur*, but proof of the elements need not be absolute or conclusive. (*Barkei*, 176 Ill. App. 3d at 688.) Initially, a trial court must decide whether, as a matter of law, the *res ipsa loquitur* doctrine is applicable, and it will not apply unless a duty of care is owed to the plaintiff. *Spidle*, 79 Ill. 2d at 5.

Plaintiff argues that the jury heard sufficient evidence regarding the knowledge by defendant of plaintiff's past behavior and the foreseeability of plaintiff's conduct in the future "to allow the jury to infer negligence through a *res ipsa loquitur* instruction."

Plaintiff primarily relies on *Clay v. Brodsky* (1986), 148 Ill. App. 3d 63, 67, 499 N.E.2d 68, for her contention that the *res ipsa loquitur* instruction was proper. Such an instruction was given to the jury in *Clay*, a case with similar facts. In *Clay*, a woman sued her doctor after giving birth to a child due to a failed tubal ligation. As occurred here, *Clay* went to the jury on both a negligence and *res ipsa loquitur* theory. The jury awarded Clay $75,000 and awarded the child's father $8,000.

Defendant contends that plaintiff failed to establish that an injury such as plaintiff's does not ordinarily occur absent negligence. The trial court noted that all experts at trial testified that a tubal ligation could fail without negligence on the part of the surgeon.

The trial court was in the best position to consider the witnesses' testimony (*Silas v. Robinson* (1985), 131 Ill. App. 3d 1058, 477 N.E.2d 4) and determine, as a matter of law, whether the elements that would permit a *res ipsa loquitur* instruction were present.

■ While it is true that a *res ipsa loquitur* instruction was given in *Clay* and upheld on appeal, the appellate court's review of testimony elicited at Clay's trial gives no indication that any doctor testified that a tubal ligation could fail without negligence on the part of the surgeon. The trial judge here specifically referred to the experts'

testimony when he determined that the instruction on *res ipsa loquitur* was given in error.

Even if this court believed the instruction on *res ipsa loquitur* was proper with regard to plaintiff's initial pregnancy and her son's birth, it would have been necessary for the trial court to indicate to the jury that the theory was not applicable with regard to the miscarriages because of the subsequent acts of the plaintiff. Therefore, the fact situation here is distinguishable from *Clay* with regard to the *res ipsa loquitur* issue, and the trial court's finding that it was error to give a *res ipsa loquitur* instruction was correct.

Finally, we consider whether the jury's verdict was excessive or in the alternative whether it was fair, reasonable and amply supported by the evidence.

■ Plaintiff primarily relies on *Clay* for her contention that the jury's verdict was fair and not excessive. The *Clay* case has similar facts to this case, and the jury awarded Clay $75,000 and awarded the child's father $8,000. Plaintiff argues that the higher award here is justified because Wilson's injuries were more extensive than Clay's and each woman could be expected to experience differing pain, suffering and disability. Plaintiff contends that where only a few cases for this particular type of injury are reported, the reviewing court should give greater deference to the jury's award.

Finally, plaintiff argues that even if this court finds it was error for the jury to consider damages for the three miscarriages, there was sufficient evidence of plaintiff's pain, suffering and disability during her pregnancy, labor and the birth of Ernest to support the jury's award. She contends that it is "highly likely that no damages were awarded for the miscarriages."

We cannot presume the jury only relied on proper instructions and disregarded improper instruction. We have already determined that the jury improperly heard evidence of the miscarriages and as to the miscarriages was improperly instructed on *res ipsa loquitur*. Therefore the jury did not have the proper foundation on which to make a reasoned judgment based on alleged damages for the pregnancy and birth of her son.

We find inappropriate plaintiff's assumption that it is "highly likely that no damages were awarded for the miscarriages." The jury did not break down its award into damages for the miscarriages and damages for the pregnancy and resulting birth. On this record we cannot determine the basis for the jury's award.

Under the holding of *McKenzie* (205 Ill. App. 3d at 833), plaintiff must show on appeal that the record indicates the trial court commit-

ted a clear abuse of discretion when it granted a new trial. We find plaintiff has failed to meet that burden and we therefore affirm the trial court's order granting defendant a new trial.

Plaintiff also urges us to make a finding on the propriety of statements made by plaintiff's counsel at trial; however, plaintiff does not identify specific comments to which she refers. Defendant identifies specific comments by plaintiff's counsel which he contends were improper. However, the trial judge, in his ruling, did not identify specific comments and therefore we find this argument is mere speculation not supported by the record. Since we affirm the trial court's order for a new trial, we need not address this issue.

Affirmed.

McNAMARA and RAKOWSKI, JJ., concur.