ST. PAUL INSURANCE COMPANY OF ILLINOIS, as Subrogee of the Greenberg Radiology Institute, Plaintiff-Appellant, v. ESTATE OF ROBERT M. VENUTE, JR., d/b/a Bob Venute Plumbing, *et al.*, Defendants-Appellees and Counterdefendants-Appellees (Alfred Caminata, Jr., d/b/a R.J.'s Westside Demo, Inc., Defendant; P.D.C. Facilities, Inc., Defendant and Counterplaintiff-Appellant).

Second District   Nos. 2—94—1170, 2—94—1171 cons.

Opinion filed September 26, 1995.

Michael Resis, D. Dean Mauro, and Paul J. Sarauskas, all of Querrey & Harrow, Ltd., of Chicago, for appellant P.D.C. Facilities, Inc.

James T. Ferrini, Susan Condon, Robert E. Gilmartin, John T. Groark, and Imelda Terrazino, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, for appellants Greenberg Radiology Institute and St. Paul Insurance Co. of Illinois.

Stacey L. Seneczko, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellee Estate of Robert M. Venute.

Edwin W. Eich, Jr., and Charles R. Franklin, both of Eich & Franklin, of Chicago, for appellee Walton Services, Inc.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, St. Paul Insurance Company of Illinois (St. Paul), and defendant and counterplaintiff, P.D.C. Facilities, Inc. (P.D.C.), filed separate appeals from a trial court order which dismissed the counts in St. Paul's multicount complaint against defendants, the estate of Robert Venute, Jr., d/b/a Bob Venute Plumbing (Venute), and Walton Services Inc. (Walton), and also dismissed all counterclaims by codefendants. We consolidated the appeals.

St. Paul, as subrogee of the Greenberg Radiology Institute (Greenberg), filed a fourth amended complaint (complaint) containing seven counts. Counts I through V were directed against P.D.C. and Alfred Caminata, Jr., d/b/a R.J.'s Westside Demo, Inc. (Westside), and sounded in negligence, *res ipsa loquitur*, and breach of contract. Count VI of the complaint was directed against Walton and sounded in negligence. Count VII of the complaint was directed against Venute and sounded in negligence.

P.D.C. filed separate amended counterclaims against Walton and Venute. The counterclaims sought contribution from Walton and Venute in the event P.D.C. was held liable to St. Paul.

Walton and Venute each motioned to dismiss the counts of St. Paul's complaint against them pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1994)). On September 8, 1994, the trial court entered an order granting the motions and dismissing counts VI and VII of the complaint. The order stated that the court found, as a matter of law, that St. Paul's complaint contained insufficient allegations to establish a duty owed by either Walton or Venute to St. Paul. The order also dismissed "[a]ny and all counterclaims or crossclaims by co-defendants and causes of action based on same." The order contained language allowing immediate appeals pursuant to Supreme Court Rule 304(a) (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 304(a), eff. February 1, 1994).

On appeal, St. Paul contends that we should reinstate its claims

against Walton and Venute because the trial court erred in determining that they did not owe it a duty. P.D.C. contends that the trial court erred in dismissing its counterclaims against Walton and Venute.

The relevant facts, as alleged in St. Paul's fourth amended complaint, are as follows. St. Paul, an insurance company, provided property and business interruption insurance coverage to Greenberg for a one-story building containing a medical facility in Highland Park (the building). Greenberg owned and operated the building. In October 1990, Greenberg retained P.D.C. to design, engineer, and construct a suite in the building suitable to house a very expensive piece of medical diagnostic equipment known as a Positron Emission Tomography scanner (PET scanner).

P.D.C. retained Westside as a subcontractor to perform demolition work in the building in preparation for the construction of the PET scanner suite. During the course of the work, either P.D.C., Westside, or another of P.D.C.'s subcontractors cut a water pipe and left it cut and uncapped. The cut and uncapped pipe was located directly above the place in Greenberg's suite where the PET scanner was ultimately positioned.

After Greenberg completed the renovation of its suite and installed the PET scanner in the suite under the cut, uncapped water pipe, Greenberg leased a vacant, unimproved portion of the building to Hawthorn Lithotripter Partners (Hawthorn). Hawthorn retained Walton to act as the general contractor for the renovation of Hawthorn's area of the building. Walton retained Venute, a plumbing contractor, to do plumbing renovation work in the Hawthorn area.

Hawthorn's area of the building contained various water lines and branch water lines which had been shut off and were not being used prior to Greenberg's lease of the area to Hawthorn. Some of the water lines in the Hawthorn area, which were unobstructed and in plain view, had leaks and were open-ended and uncapped.

One of the water lines ran from Hawthorn's area into adjoining rooms and through them into Greenberg's area of the building. This water line was designated branch B1-1 on a layout of the water lines in the building attached to St. Paul's complaint. In the Greenberg area, the B1-1 line was the pipe which had been cut and left uncapped above the PET scanner. In Hawthorn's area, the B1-1 line was "unobstructed and in plain view so that it could be easily traced from where it originated in the Hawthorn portion of the building, to where it entered the Greenberg Institute." The B1-1 line was an inactive or "dead" line which had been taken out of service prior to Hawthorn's

lease of its area. The B1-1 line was shut off at a main valve located in Hawthorn's area. In the Hawthorn area, the B1-1 line had a shut-off valve which, if fully and properly closed, would prevent water from flowing into the Greenberg area if the line were activated.

On September 18, 1991, Venute opened the main water line in Hawthorn's area to test for leaks in the system. Venute had not closed the valve which would have prevented water from flowing into Greenberg's area. Water flowed freely through the B1-1 line and ran into the Greenberg area. In the Greenberg area, water poured out of the open and uncapped pipe and onto the PET scanner directly below causing substantial damage to the scanner.

Pursuant to its obligations as Greenberg's insurer, St. Paul paid Greenberg compensation for the damage. St. Paul was consequently subrogated to Greenberg's rights and brought this suit as Greenberg's subrogee.

We must determine whether the trial court erred when it dismissed St. Paul's complaint pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 1994)). Our determination will also resolve the question of the viability of P.D.C.'s counterclaims for contribution. Well-established principles guide us in this determination.

■ Because a motion to dismiss under section 2—615 attacks only the legal sufficiency of a complaint, the question presented by such a motion is whether sufficient facts are contained in the pleadings which, if proved, would entitle a plaintiff to relief. (*Urbaitis v. Commonwealth Edison* (1991), 143 Ill. 2d 458, 475.) A trial court should dismiss a cause of action on the pleadings only if it is clearly apparent that no set of facts can be proven which will entitle a plaintiff to recovery. (*Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 488.) The only matters to be considered in ruling on a section 2—615 motion to dismiss are the allegations of the pleadings themselves. (*Urbaitis*, 143 Ill. 2d at 475.) A reviewing court must take all well-pleaded facts in the attacked portions of the complaint as true and determine whether the allegations, when viewed in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 505.

Counts VI and VII of St. Paul's complaint alleged that Walton and Venute were negligent. In order to state a cause of action for negligence, a complaint must establish that the defendant owed the plaintiff a duty, that the defendant breached the duty, and that the breach proximately caused injuries to the plaintiff. (*Doe v. Calumet City* (1994), 161 Ill. 2d 374, 384.) The existence of a duty is a question of law for the court to decide and depends upon whether the parties

stood in such a relationship to one another that the law imposed an obligation on the defendant to act reasonably for the protection of the plaintiff. *McLane v. Russell* (1989), 131 Ill. 2d 509, 514-15.

The question before us is whether St. Paul's fourth amended complaint alleged sufficient facts to establish that either Walton or Venute owed a duty to St. Paul. The complaint generally alleged that Venute owed a duty to St. Paul to perform properly the plumbing duties Venute was charged with and that Walton owed a duty to St. Paul to insure that Venute properly performed these duties. The complaint alleged that Venute had a duty to perform, and that Walton had a duty to insure that Venute performed, a number of specific actions including the following: to investigate and make inquiries regarding the condition and location of the B1-1 line outside Hawthorn's area; to notify building occupants, including Greenberg, that the line would be tested or activated; to air test the line rather than water test it; to close the shut-off valve before testing the line; and to comply with applicable plumbing codes.

■ The parties agree on the factors that a court should consider in determining whether a duty exists in a particular case. In *Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, our supreme court set out the factors as follows: "a court must weigh the foreseeability that defendant's conduct will result in injury to another and the likelihood of an injury occurring, against the burden to defendant of imposing a duty, and the consequences of imposing this burden." 142 Ill. 2d at 47.

■ ■ Foreseeability of harm, in connection with a duty, is not a magical concept that ignores common sense. (*Slager v. Commonwealth Edison Co.* (1992), 230 Ill. App. 3d 894, 904.) Foreseeability includes whatever is likely enough to occur that a reasonably thoughtful person would take it into account in guiding his or her practical conduct. (*Jackson v. Illinois Central Gulf R.R. Co.* (1974), 18 Ill. App. 3d 680, 689.) Applying these principles to the particular facts of this case, we conclude that the likelihood of injury resulting from Venute's actions was foreseeable. Venute activated an unused water line, at least part of which was in need of repair, and thereby allowed water to flow through the line and into Greenberg's area of the building without previously notifying Greenberg. A reasonably thoughtful contractor in Venute's position would have foreseen that injury to property in Greenberg's premises could occur as a result.

Moreover, the burden on Venute of preventing the water from flowing into Greenberg's premises was slight. Venute simply could have closed the shut-off valve or made an air test of the line and accomplished its purpose without allowing water into Greenberg's area. In addition, Venute could have given Greenberg an opportunity to

prevent the flow of water into its area by notifying Greenberg of the test before it took place.

Where the burden of protecting against injury is slight, even a remote danger of injury will render the failure to exercise due care unreasonable. (*Stemen v. Avon Products, Inc.* (1992), 234 Ill. App. 3d 300, 304.) Here, even if the likelihood of injury was small, the gravity of the injury was considerable and the burden of guarding against it was slight. In balancing the foreseeability and likelihood of injury against the burden of preventing the injury and the consequences of imposing this burden, we conclude that Walton and Venute owed a duty of care to Greenberg.

Relying primarily on *Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, Walton and Venute contend that imposing such a duty on them is tantamount to requiring them to guard against the negligence of others. However, their reliance on *Ziemba* is misplaced.

In *Ziemba*, a bicyclist was injured when the bicycle he was riding in a roadway adjoining the defendant landowner's property collided with a truck exiting a driveway from the property. (142 Ill. 2d at 45.) The plaintiff alleged that foliage obscured the driveway entrance and that the defendant landowner therefore had a duty to warn vehicles in the roadway of the dangerous condition. (142 Ill. 2d at 46.) The supreme court determined that the defendant landowner did not owe the plaintiff a duty because the defendant could not foresee that the truck driver would negligently exit the driveway. The court also stated that, even if the accident was foreseeable, the imposition of a general duty to guard against the negligence of others would place an intolerable burden on society. 142 Ill. 2d at 52.

*Ziemba* is distinguishable from this case because *Ziemba* involved the liability of a landowner for an injury occurring off the owner's land. The present case involves the liability of contractors for their negligent acts or omissions. In this context, whether the negligent acts of others were also involved is not controlling.

As the supreme court noted in *Ziemba*, whether a duty exists will depend in large part upon the relationship between the parties. (142 Ill. 2d at 48.) In that case there was no physical contact between the defendant's land and the plaintiff. In contrast, it is alleged here that defendants actively set into motion a potentially destructive force by sending flowing water into plaintiff's premises via an unused pipeline resulting in the water contacting and damaging plaintiff's property. In *Ziemba*, it was noted that the condition on defendant's land, *i.e.*, foliage, was not itself a danger absent the negligent conduct of the truck driver. Here, however, the potential for damage by uncontrolled water is apparent.

Just as defendants have argued here that they had no duty to anticipate plaintiff's negligence in failing to cap an exposed water line, plaintiff argues, with equal vigor, that it was not required to cap the line because it had no reason to anticipate that defendants would suddenly and without warning activate a dormant line. Considering the facts in the light most favorable to plaintiff, we conclude that both of these parties had a duty to exercise ordinary care in their conduct and that the relative degree of their culpability is a matter to be resolved by the trier of fact. Even where an injury would not have occurred but for the negligence of another, a negligent party cannot avoid responsibility for its own negligence. *Carter v. Indiana Harbor Belt R.R. Co.* (1989), 190 Ill. App. 3d 1052, 1056.

We hold that Walton and Venute had a duty either to close the shut-off valve, to notify Greenberg before activating the water line, or to test the line by an air test rather than a water test. We recognize that the Illinois Administrative Code allows either water or air testing of plumbing systems (77 Ill. Adm. Code § 890.130 (1994)). Our holding is that, if Venute decided to water test the system, he had a duty to close the shut-off valve which would have prevented water from flowing into Greenberg's premises or to notify Greenberg before water testing. If Venute had decided to air test the system, according to the complaint, no damage would have been done to the PET scanner. Thus, counts VI and VII of plaintiff's fourth amended complaint were sufficient to state a cause of action for negligence. Accordingly, the court erred when it dismissed counts VI and VII of plaintiff's fourth amended complaint. Because the dismissal of P.D.C.'s counterclaims was based on the dismissal of counts VI and VII, the trial court also erred in dismissing the counterclaims.

For the foregoing reasons, the order of the circuit court of Lake County dismissing counts VI and VII of St. Paul's fourth amended complaint and all counterclaims or crossclaims based on counts VI and VII is reversed, and the cause is remanded for further proceedings not inconsistent with this decision.

Reversed and remanded.

McLAREN, P.J., and BOWMAN, J., concur.