ROBERT CARROLL, Plaintiff-Appellant, v. JACK R. FAUST *et al.*, d/b/a Travlur Motel and Lounge, a/k/a Rustic Motel, Defendants-Appellees.—ROBERT CARROLL, Plaintiff-Appellant, v. JACK R. FAUST *et al.*, d/b/a Travlur Motel and Lounge, a/k/a Rustic Motel, *et al.*, Defendants-Appellees.

Second District   Nos. 2—98—1501, 2—99—0119 cons.

Opinion filed February 25, 2000.

William T. Cacciatore and Eileen J. McGeever, both of Cacciatore Law Offices, of Rockford, for appellant.

Gregory E. Cox and Bruce C. Kelber, both of Hinshaw & Culbertson, of Rockford, for appellee Jack R. Faust.

Donald M. Mateer, of Mateer & Associates, of Rockford, and George W. Flynn and Thomas Klosowski, both of Flynn & Gaskins, of Minneapolis, Minnesota, for appellees Emerson Electric Company and White-Rodgers Division.

Wendell W. Clancy, of Clancy, Higgins & Clancy, Ltd., of St. Charles, for appellees American Water Heater Company and Southcorp USA, Inc.

JUSTICE GALASSO delivered the opinion of the court:

The plaintiff, Robert Carroll, appeals from orders of the circuit court of Winnebago County dismissing his third and fourth amended complaints for personal injuries against the defendants, Jack R. Faust, Ervin Muenster, Valera Muenster, and Menzis Venko, doing business as Travlur Motel & Lounge, also known as Rustic Motel (collectively Faust), American Water Heater Company (American), and Emerson Electric Company (Emerson).

The following facts are taken from the third and fourth amended complaints. On June 23, 1996, the plaintiff was a guest at Faust's motel. At approximately 1 a.m., the plaintiff drew water from the bathtub faucet into the bathtub to soak his feet and ankles. Due to the 170 degree temperature of the water from the faucet, the plaintiff sustained severe injuries to his feet and ankles requiring the amputation of all of the toes on both feet and the amputation of his lower right leg.

In a series of complaints, the plaintiff sued Faust, the owner of the motel, under theories of negligence and *res ipsa loquitur* (counts I through II); US/Craftsmaster Water Heater Company, a manufacturer of hot water heaters, under theories of negligence and product liability (counts III through IV); American Water Heater Company (misidentified as Southcorp, USA, Inc.), a manufacturer of water heaters, under theories of negligence and product liability (counts V through VI); American Water Heater Group, a manufacturer of water heaters, under theories of negligence and product liability (counts VII through

VIII); Emerson Electric Company, a manufacturer of water heater thermostats, under theories of negligence and product liability (counts IX through X); and White-Rodgers, a manufacturer of water heater thermostats, under theories of negligence and product liability (counts IX through XII).

During the proceedings below, the parties agreed that US/ Craftsmaster Company, Southcorp USA, Inc., American Water Heater Company, and American Water Heater Group would be collectively referred to as American Water Heater Company. We shall continue to refer to them collectively as "American." In addition, White-Rodgers is a division of Emerson Electric Company, and, therefore, we shall refer to them collectively as "Emerson."

On August 27, 1998, the trial court dismissed counts I and II of the third amended complaint with prejudice pursuant to Faust's motion to dismiss under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)). On November 9, 1998, the trial court made a finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason to delay the enforcement or appeal of its August 27, 1998, order. On November 18, 1998, the plaintiff filed his notice of appeal from the dismissal of counts I and II. On January 21, 1999, the trial court dismissed the remaining counts III through XII of the fourth amended complaint with prejudice. The plaintiff filed his notice of appeal from that order on February 1, 1999. On February 16, 1999, this court consolidated the two appeals for review.

### MOTION TO STRIKE PORTIONS OF THE PLAINTIFF'S BRIEF

Faust filed a motion to strike certain portions of the plaintiff's brief on the basis that the plaintiff's brief and appendix contain references to and copies of unsworn exhibits that the plaintiff is using to support his position on appeal. The plaintiff responded that these exhibits are articles pertaining to the allegations contained in the third amended complaint and are necessarily involved in the duty-risk analysis. Moreover, the American National Standards Institute (ANSI) standards were specifically pleaded in the third amended complaint. We ordered the motion and response be taken with the case.

■ It is well established that evidentiary matters outside the pleadings may not be considered in ruling on a section 2—615 motion. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991). Moreover, attachments to briefs not included in the record are not properly before the reviewing court and cannot be used to supplement the record. *Zimmer v. Melendez*, 222 Ill. App. 3d 390, 394-95 (1991).

With the exception of the allegation as to the ANSI standards, none of the material complained of was part of the record below, and, therefore, we will not consider either those exhibits contained in the appendix or the references to those exhibits contained in the plaintiff's brief. See *Zimmer*, 222 Ill. App. 3d at 395.

## STANDARD OF REVIEW

We review the granting of a motion to dismiss pursuant to section 2—615 *de novo*. See *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1084 (1994).

■ When the legal sufficiency of a complaint is challenged by a section 2—615 motion to dismiss, all well-pleaded facts alleged in the complaint are taken as true. *T&S Signs*, 261 Ill. App. 3d at 1083. On review of a section 2—615 dismissal, the reviewing court must determine whether the allegations of the complaint, when interpreted in a light most favorable to the plaintiff, sufficiently set forth a cause of action on which relief may be granted. *T&S Signs*, 261 Ill. App. 3d at 1083. The motion should be granted only if the plaintiff can prove no set of facts to support the cause of action asserted. *T&S Signs*, 261 Ill. App. 3d at 1083-84. This process does not require the reviewing court to weigh findings of fact or determine credibility, and, as such, it is not required to defer to the trial court's judgment. 261 Ill. App. 3d at 1084.

## FAUST

1. Negligence.

In his third amended complaint, the plaintiff alleged that Faust was negligent for the following: permitting the thermostat of the hot water heater to be turned to an unsafe level in violation of the warnings in the owner's manual and the ANSI standards; failing to inspect the thermostat of the hot water heater to insure that the water coming from the bathtub faucet was at 120 degrees, the maximum required temperature, rather than the 170 degrees at which it was actually set; failing to reduce the temperature setting from 170 degrees to 120 degrees; failing to warn his guests that the temperature of the water from the bathtub faucet was 170 degrees, which could cause instantaneous severe burns; and failing to read or follow the water heater manual instructions to set the thermostat at 120 degrees instead of the approximately 170 degrees at which the water temperature was set. The plaintiff further alleged that as a result of these acts of negligence he sustained severe personal injuries.

■ In order to state a cause of action for negligence, the plaintiff's complaint must establish that the defendant owed the plaintiff a duty,

that the defendant breached that duty, and that the plaintiff's injury was proximately caused by the breach. *Doe v. Calumet City*, 161 Ill. 2d 374, 384 (1994). The existence of a duty is a question of law for the court to decide and depends upon whether the parties stood in such a relationship to one another that the law imposed an obligation on the defendant to act reasonably for the protection of the plaintiff. *St. Paul Insurance Co. v. Estate of Venute*, 275 Ill. App. 3d 432, 436 (1995). In considering whether a duty exists, a court must weigh the foreseeability that the defendant's conduct will result in injury to another and the likelihood of an injury occurring against the burden to the defendant of imposing a duty and the consequences of imposing this burden. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47 (1991). The existence of a legal duty is not to be bottomed on the fact of foreseeability alone but also on whether the harm was reasonably foreseeable. *National Bank v. Westinghouse Electric Corp.*, 235 Ill. App. 3d 697, 704 (1992).

■ The fact that hot water within a range of temperatures can scald or burn skin is open and obvious. *National Bank*, 235 Ill. App. 3d at 708. However, as our supreme court noted in *Ward v. K mart Corp.* 136 Ill. 2d 132, 150 (1990), the manifest trend of the courts is away from the traditional rule of absolving, *ipso facto*, owners and occupiers of land from liability resulting from known or obvious conditions. Instead, liability will not be imposed where the danger is known or obvious unless, under the circumstances present, the harm should be anticipated. *Ward*, 136 Ill. 2d at 149-51.

■ The foreseeability of harm, in connection with a duty, is not a magical concept that ignores common sense. *Estate of Venute*, 275 Ill. App. 3d at 436. Foreseeability includes whatever is likely enough to occur that a reasonably thoughtful person would take it into account in guiding his or her practical conduct. *Estate of Venute*, 275 Ill. App. 3d at 436.

The plaintiff maintains that Faust was negligent because he failed to determine that the water heater thermostat was set at a higher temperature than the temperature set forth in the industry standards and then failed either to reduce the temperature setting or to warn the plaintiff that the temperature was set higher than it should have been. Faust responds that it is reasonable to assume that a person would not use the hot water untempered by cold water or would remove a body part from water that was too hot. See *National Bank*, 235 Ill. App. 3d at 706.

■ Applying the principles set forth above, we conclude that the likelihood of injury resulting from Faust's actions, as pleaded in the plaintiff's third amended complaint, was foreseeable. The temperature of the hot water was, allegedly, set at 170 degrees, which causes

instantaneous injuries. There is nothing to distinguish water heated to 120 degrees, the recommended temperature, from water heated to 170 degrees. The plaintiff, drawing water for a bath, would have no reason to believe that water coming out of a bathtub faucet would be heated to such a degree as to cause instantaneous injury, until he was actually injured. Faust failed to inspect the water heater to determine that it was set at a safe temperature for bathing purposes, to adjust the temperature, or to warn the guests of the motel, such as the plaintiff, that the water coming out of the bathtub faucet was heated to the point that it could cause instantaneous injury. A reasonable motel owner would have foreseen that a motel guest, such as the plaintiff, could sustain injuries as a result of such conduct.

Our decision in this case is not at odds with the prior decisions in *National Bank* and *Gengler v. Herrington*, 219 Ill. App. 3d 6 (1991), both of which were relied on by Faust in this case. In both of those cases, the defendants prevailed at the summary judgment stage of the proceedings. In *National Bank*, the 14-month-old victim was scalded when she climbed into the bathroom sink and turned on the hot water. The thermostat on the water heater was preset at 150 degrees. In upholding the granting of the summary judgment to the manufacturer, the reviewing court had the benefit of expert opinion evidence, given in support of the motion for summary judgment, in which the expert opined as to the industry custom and practices. *National Bank*, 235 Ill. App. 3d at 700. Moreover, in that case, the issue concerned whether the water heater was preset at too high a temperature whereas here the issue is whether Faust breached his duty to the plaintiff by failing to discover and to warn the plaintiff that the water, at 170 degrees, could injure him instantaneously.

In *Gengler*, the three-year-old victim was scalded when he turned on the hot water in the bathroom sink. In upholding the summary judgment for the landlord, this court noted that there was no evidence that the landlord was aware of a defect in the hot water system, and there was no expert testimony in the record. *Gengler*, 219 Ill. App. 3d at 12. However, in the present case, the plaintiff has alleged that the water heater was set at a temperature that could cause instantaneous injury and that Faust was negligent for failing to discover that fact and to warn the plaintiff.

Where the burden of protecting against injury is slight, even a remote danger of injury will render the failure to exercise due care unreasonable. *Estate of Venute*, 275 Ill. App. 3d at 437. While the likelihood of injury might be small in this case, *i.e.*, most persons would pretest the bath water temperature, the gravity of the injury was considerable, *i.e.*, instantaneous severe burns, and the burden of

guarding against it was slight, *i.e.*, inspection. See *Estate of Venute*, 275 Ill. App. 3d at 437. In balancing the foreseeability and likelihood of injury against the consequences of imposing this burden, we conclude that Faust owed a duty of care to the plaintiff.

We hold that Faust had a duty to inspect the motel's water heater to determine whether the water temperature was set at a safe level and to either reduce the temperature or warn its guests, such as plaintiff, that the water temperature was at a level at which instantaneous injury could occur. Therefore, the trial court erred in dismissing count I of the plaintiff's third amended complaint.

### 2. *Res Ipsa Loquitur*

■ The doctrine of *res ipsa loquitur* is not a separate legal theory but, rather, is a type of circumstantial evidence that permits a trier of fact to infer negligence when the precise cause of the injury is not known by the plaintiff. *Wilson v. Michel*, 224 Ill. App. 3d 380, 386 (1991). Initially, a trial court must decide whether, as a matter of law, the *res ipsa loquitur* doctrine is applicable, and it will not apply unless a duty of care is owed to the plaintiff. *Wilson*, 224 Ill. App. 3d at 386.

■ Once a duty of care exists, and we have determined in this case that it does, the trial court must also determine, as a matter of law, whether the plaintiff established the necessary elements of *res ipsa loquitur*, namely, that (1) the occurrence does not usually happen in the absence of negligence, (2) the defendant was in exclusive control of the instrumentality that caused the injury, and (3) circumstances indicated that the injury was not due to any voluntary act or neglect on the part of the plaintiff. *Wilson v. Michel*, 224 Ill. App. 3d 380, 385-86 (1991). A plaintiff bears the burden of proving the elements of *res ipsa loquitur*, but proof of the elements need not be absolute or conclusive. *Wilson*, 224 Ill. App. 3d at 386.

■ In the present case, the plaintiff alleged that, at all relevant times, he was exercising ordinary care for his own safety. We are of the opinion that the plaintiff's allegation that he was injured by water heated to 170 degrees coming out of a bathtub faucet, given the danger posed by water heated to such a temperature, is sufficient to establish that such an injury would not have occurred in the absence of negligence.

However, we are further of the opinion that the plaintiff has failed to establish that Faust had exclusive control of the instrumentality causing the injury. In *Gengler*, this court discussed the decision in *King v. Wiesel*, 67 R.I. 182, 21 A.2d 262 (1941), and noted that, in that case, the court had held the doctrine of *res ipsa loquitur* inapplicable since the mixing of the hot and cold water was not exclusively in the

control of the defendants and required the intervention of the plaintiff in operating the faucets. *Gengler*, 219 Ill. App. 3d at 12.

In this case, the plaintiff alleged in his third amended complaint that he drew tap water from the faucet that resulted in his injury. While the plaintiff alleged that the water heater was under the exclusive control of Faust, the plaintiff was injured by the hot water itself. In order for the plaintiff to be injured in this case, he himself had to turn on the bathtub faucet. Therefore, the allegations in the complaint fail to establish that Faust had exclusive control over the instrumentality that caused the injury.

We conclude that the plaintiff failed to state a cause of action against Faust under the doctrine of *res ipsa loquitur*, and, therefore, the trial court did not err in dismissing count II of the third amended complaint.

## AMERICAN AND EMERSON

American is the manufacturer of the water heater in this case, and Emerson is the manufacturer of the thermostat, a component part of the water heater. Because the allegations against these defendants are virtually identical and the analysis of their respective liability would be the same, we will discuss them together. We emphasize that, at this stage of the pleadings, we are required to take all well-pleaded facts alleged in the complaint as true and that the allegations in the complaint must be interpreted in the light most favorable to the plaintiff. *T&S Signs*, 261 Ill. App. 3d at 1083.

### 1. Negligence

In the pertinent counts of his fourth amended complaint, the plaintiff alleged that American and Emerson were negligent in that they:

"a. Failed to place warnings and risks of injury on the thermostat of the hot water heater which correlate to the thermostat markings relating to proper temperature settings ***.

b. Failed to provide clearly labeled markings on the dial surrounding the thermostat which would show the actual temperature of the water at all possible thermostat settings ***.

c. Failed to provide instructions to the installer of the water heater as to the specific letter on the thermostat that represents a temperature of 120 degree[s] ***.

d. Failed to provide an owners manual or other sufficient instructions to the purchaser and owner of the water heater to properly set said thermostat at a temperature of 120 degrees ***."

In connection with these allegations, the plaintiff also alleged that, in the absence of such warnings, labels, or owner's manual, the installer,

owner, or operator of the water heater would not know that the temperature of the water could reach 170 degrees and cause severe injuries or death to someone, like the plaintiff, using water drawn from the bathtub faucet.

The plaintiff further alleged that American and Emerson:

"e. Failed to design and manufacture the thermostat with a control knob stop that would have reduced the ease of turning the knob by hand to a setting over the required maximum of 120 degrees, by requiring the stop to be removed by using a special tool, such as a hex key or Torx wrench, when the Defendant knew or should have known that failing to design and manufacture the thermostat with a control knob stop could cause the thermostat to be set at a temperature of 170 degrees or higher and could cause instantaneous severe burns, serious injuries or death to persons using water drawn from the bathtub faucet, including the Plaintiff ***.

f. Failed to reduce the temperature setting on the hot water heater in question from the setting of 170 degrees, when it left the control of the manufacturer, to the required maximum of 120 degrees, when Defendant knew that such hot water heaters may be used by commercial entities, precluding consumers, such as Plaintiff, *** who was a guest of the Defendant, RUSTIC MOTEL, who have absolutely no control over the temperature setting of said hot water heater, from being scalded and severely injured by water heated to a temperature in excess of the maximum 120 degrees.

g. Failed to reduce the temperature setting on the hot water heater in question from the setting of 170 degrees to the required 120 degrees, to prevent instantaneous severe burns, serious injuries or death, when Defendant knew or should have known that a commercial entity or consumer might not read its manual and reduce said temperature.

h. Failed to reduce the temperature setting on the hot water heater in question from the setting of 170 degrees to the required 120 degrees, when the Defendant knew or should have known that not all water systems would be able to mix cold water with hot water to reduce the temperatures without a blending or mixing valve or that 'anti-scald' devices would be installed, to insure the mixture of hot and cold water.

i. Failed to supply instructions in a pocket part attached to said gas hot water heater to prevent instantaneous severe burns, serious injuries or death by persons using said water heater, including Plaintiff, *** in violation of standards of the industry ***.

j. Failed to alert persons to the fact that the temperature setting on said thermostat of said water heater at 170 degrees or more

might or could cause severe burns, serious injuries or death to persons using said water heater, in violation of the standards of the industry ***.

k. Failed to otherwise use due care in designing, manufacturing, distributing and selling said thermostat."

From these allegations, we must determine if American and Emerson owed a duty to act reasonably for the protection of the plaintiff. See *Estate of Venute*, 275 Ill. App. 3d at 436. In doing so, we must weigh the foreseeability that American's and Emerson's conduct would result in an injury to the plaintiff and the likelihood of an injury occurring against the burden of imposing a duty and the consequences of imposing this burden. *Estate of Venute*, 275 Ill. App. 3d at 436.

Applying the above principles to the facts, we conclude that the likelihood of injury resulting from American's and Emerson's actions or failure to act, as alleged in the fourth amended complaint, was foreseeable. It is alleged that, when the water heater left the manufacturer's control, the thermostat was preset at 170 degrees. The water heater was not labeled and had no warnings on it, nor was it accompanied by instructions or an owner's manual explaining that, once the water heater was installed, the temperature could be adjusted to the appropriate temperature for the uses to which the water would be put. The only allegation as to the use of the water is for bathing purposes. As alleged, exposure to water at 170 degrees causes instantaneous injury. At this stage in the proceedings, there is nothing to establish the necessity for so high a water temperature. Therefore, by allowing the thermostat to be set at 170 degrees when the water was to be used for bathing purposes and not providing instructions or warnings of any kind, American and Emerson should have foreseen that a person drawing water for a bath would be injured.

We further conclude that the burden on American and Emerson of preventing such an injury was a small one. American and Emerson could have preset the thermostat at its lowest setting and provided instructions either on the water heater itself or in an owner's manual as to how to adjust the thermostat to achieve the proper water temperature for the task at hand.

In this case, given that the injury was foreseeable, the severity of the injury outweighs the minimal burden of preventing it, and, therefore, we conclude that American and Emerson owed a duty of care to the plaintiff.

We wish to emphasize that our decision on this issue is based on the fact that this case is still in the early stages of the pleading process. As yet, American and Emerson have not had an opportunity to oppose the allegations in the fourth amended complaint. We do not

disagree with the results reached in either *National Bank* or *Gengler*. However, as we previously noted, both of those cases were decided on motions for summary judgment. For the most part, the factors relied upon by the reviewing courts to uphold the granting of a summary judgment in those cases are absent, as of yet, in the present case.

We conclude that the trial court erred in dismissing counts III, V, VII, IX, and XI of the fourth amended complaint on the basis that American and Emerson owed no duty of care to the plaintiff in this case.

### 2. Product Liability

In his fourth amended complaint, the plaintiff alleged a product liability theory against American and Emerson. The plaintiff restated the negligence allegations, adding that, as a result, the water heater was in an unreasonably dangerous condition.

In product liability actions, a manufacturer has a nondelegable duty to produce a product that is reasonably safe. *Baltus v. Weaver Division of Kidde & Co.*, 199 Ill. App. 3d 821, 829 (1990). The distinction between claims in strict liability and negligence lies in the fault concept; in strict liability, the focus is on the defective condition of the product regardless of fault, but in negligence the defendant's fault is additionally an issue. *Baltus*, 199 Ill. App. 3d at 829. In both strict liability and negligence actions, the threshold question as to an unreasonably dangerous design is not whether the product could have been made safer, but whether it is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function. *National Bank*, 235 Ill. App. 3d at 708. "Foreseeability of injury alone does not define a manufacturer's duty; strict liability for an unreasonably dangerous product applies 'only when the product is "dangerous to an extent *beyond* that which would be contemplated by the ordinary [person] \*\*\*, with ordinary knowledge common to the community as to its characteristics." (Emphasis added.)' [Citations.]" *Baltus*, 199 Ill. App. 3d at 830.

The purpose of the product in this case was to heat water. There is no allegation that the water heater failed to perform its intended function. Instead, the plaintiff maintains that the water heater was unreasonably dangerous in that its preset temperature was too high, its thermostat control knob was too easy to adjust upwards, it had no owner's manual, and it lacked an anti-scald device or thermostatic mixing valves.

A manufacturer is duty-bound to adopt all devices necessary to make his product not unreasonably dangerous. *Fuller v. Fend-All Co.*, 70 Ill. App. 3d 634, 637 (1979). In determining whether a product

is unreasonably dangerous, the focus should be placed on the product itself and not the availability of additional safety devices. *Fuller*, 70 Ill. App. 3d at 638. From the allegations of the plaintiff's fourth amended complaint, it appears that the thermostat on the water heater was adjustable, *i.e.*, the temperature of the water could be adjusted. We believe that the manufacturers could reasonably assume that the consumer would adjust the thermostat to achieve the desired water temperature.

The plaintiff alleged that the water heater was defective in that it was too easy to adjust the thermostat control, not that the control failed to work. While alleging that 120 degrees was the maximum temperature at which the thermostat should have been set, the plaintiff alleges no industry standards requiring the type of control knob suggested by the plaintiff. See *National Bank*, 235 Ill. App. 3d at 709.

The factors cited by the plaintiff, *i.e.*, the lack of a more-difficult-to-adjust control knob on the thermostat, the lack of an anti-scald device or thermostatic mixing valves, the failure to provide an owner's manual, and the fact that the water heater was preset at 170 degrees, did not render the water heater itself unreasonably dangerous, given that the water heater performed in the manner reasonably to be expected in light of its nature and intended function.

We conclude that the plaintiff has failed to state a cause of action in product liability against American and Emerson and, therefore, the trial court did not err in dismissing counts IV, VI, VIII, X, and XII of the plaintiff's fourth amended complaint.

The judgment of the circuit court is affirmed as to count II of the third amended complaint and counts IV, VI, VIII, X, and XII of the fourth amended complaint; the judgment is reversed and the cause is remanded as to count I of the third amended complaint and counts III, V, VII, IX, and XI of the fourth amended complaint.

Affirmed in part and reversed in part; cause remanded.

HUTCHINSON and RAPP, JJ., concur.