XAVER SCHMID, Plaintiff-Appellee, v. FAIRMONT HOTEL COMPANY-CHICAGO *et al.*, Defendants-Appellants (Fairmont Hotel Company-Chicago, Cross-Plaintiff Appellant; Maron Electric Company, Defendant and Cross-Defendant Appellee).

First District (1st Division)   No. 1—02—3614

Opinion filed December 31, 2003.

Jean M. Golden, Donald F. Ivansek, and Brian A. Schroeder, all of Cassiday, Schade & Gloor, of Chicago, for appellants.

John Bernard Cashion, of Chicago, for appellee Xaver Schmid.

Joseph P. Postel, Anthony Vero, and John F. Boyle, all of Meachum, Spahr, Cozzi, Postel, Zenz & Matyas, of Chicago, for appellee Maron Electric Company.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, Xaver Schmid, commenced this negligence action against defendants, Fairmont Hotel (Fairmont) and Maron Electric Company (Maron), to recover for an injury he sustained when he turned on a vanity light switch near the bathroom in his hotel room and received an electrical shock; contemporaneously, one of the vanity lights sparked, and plaintiff moved backwards, striking the bathroom door frame. At the time of the incident, in May of 1999, plaintiff was a

cargo pilot for Lufthansa Airlines. He was subsequently diagnosed with an injury to his right shoulder and arm. Plaintiff alleged that his injury resulted from the incident, and that because of the injury, he lost his pilot's license in February of 2001 and can no longer work as a pilot.

Plaintiff alleged *res ipsa loquitur* and common law negligence as theories of recovery against Fairmont and Maron. The basis for his claims against Fairmont was premises liability. The basis for his claims against Maron was that Maron, pursuant to a written contract between it and Fairmont, supplied to Fairmont a licensed electrician named Adolph Schnur (Schnur) to serve as a chief electrician of the hotel, while remaining a Maron employee. Maron also provided Fairmont with electrical services and materials. Plaintiff contends that, in doing so, Maron assumed and owed plaintiff a duty of care to maintain the electrical fixtures and wiring in plaintiff's guest room in a reasonably safe condition.

The Fairmont-Maron contract also contained a provision that Maron, an independent contractor, would indemnify Fairmont from all claims arising out of the work to be performed by Maron. Fairmont initially filed a cross-claim against Maron for contribution and contractual indemnification. Maron moved to dismiss Fairmont's indemnification count, arguing that the indemnification provision of the Fairmont-Maron contract was unenforceable under the Illinois Construction Contract Indemnification for Negligence Act (Anti-Indemnity Act) (740 ILCS 35/1 (West 2002)). The trial court granted Maron's motion in part and limited Fairmont's indemnification count to that of vicarious liability for Maron's (*i.e.*, Schnur's) conduct.[1] The trial court further decided that it would consider Fairmont's indemnification count after the jury resolved all other claims.

The jury returned a general verdict finding Fairmont solely liable for plaintiff's injury and Maron not liable. In an answer to a special interrogatory, the jury found that Schnur was not negligent. Accordingly, the trial court entered judgment for Maron on Fairmont's

[1]Plaintiff amended his complaint twice. Fairmont initially cross-claimed against Maron for contribution and contractual indemnification. Subsequent to plaintiff filing a second amended complaint, Fairmont filed a second amended cross-claim against Maron, alleging contribution and contractual indemnification for its vicarious liability only. Maron argues that, in doing so, Fairmont waived the right to challenge the trial judge's decision to dismiss in part Fairmont's indemnification count and the right to argue on appeal that the indemnification provision of the Fairmont-Maron contract does not violate the Anti-Indemnity Act. Because of our disposition of this case, we need not decide Maron's waiver argument.

contribution count. Following the entry of judgment on the jury's verdict, Maron moved for summary judgment on Fairmont's indemnification count, arguing that Fairmont's liability was direct and not vicarious, while Fairmont moved for judgment notwithstanding the verdict (judgment *n.o.v.*) or, in the alternative, for a new trial. The trial court denied Fairmont's motion for judgment *n.o.v.* or, in the alternative, a new trial, and granted Maron's motion for summary judgment. Fairmont now appeals.

## BACKGROUND

The Fairmont Hotel is located in Chicago, Illinois. It opened for business in December of 1987. At the time of the incident, Fairmont had over 600 guest rooms, each of which contained a vanity light fixture with a mirror near the bathroom; the fixture had four decorative light bulbs on each side of the mirror.

Adolph Schnur, a licensed electrician, was an electrical foreman during Fairmont's construction. After the construction was completed, Charles Biagi (Biagi), Fairmont's director of engineering, was interested in hiring Schnur as Fairmont's "house" electrician. Fairmont contracted with Maron for Schnur's services. Pursuant to the Fairmont-Maron contract, Schnur was to serve as a chief electrician of the hotel, while remaining a Maron employee; in addition, Maron was to provide Fairmont with electrical services and materials. The Fairmont-Maron contract also contained a provision that Maron, an independent contractor, would indemnify Fairmont from all claims arising out of the work to be performed by Maron. This contract was renewed annually between the years 1988 and 2001. Schnur was Fairmont's "house" electrician until the time of his death, before this case went to trial. Maintenance at Fairmont was handled by a staff of maintenance engineers.

Plaintiff testified that at the time of the incident, he lived in Germany and worked as a cargo pilot for Lufthansa Airlines. On May 6, 1999, plaintiff flew a Lufthansa 747 cargo aircraft nonstop from Frankfurt to Chicago. He arrived at the Fairmont shortly after midnight. After checking in, plaintiff retired to his guest room and went to bed without using the bathroom. At approximately 6 a.m., plaintiff got out of bed to use the bathroom. The room was dark, and before he entered the bathroom, he turned on the light switch with his right hand. According to plaintiff, he felt an electric shock and saw a flash of very bright light from the vanity light in front of him. This caused plaintiff to jump or fall backward, striking the edge of the bathroom door frame with his head, neck and the right side of his shoulder. Plaintiff felt pain when he hit the door frame, but went back

to bed. After waking up, plaintiff called the reception desk because the lights in his room did not work. A maintenance engineer was sent to investigate the problem, found that a circuit breaker had tripped, and reset it. As the day progressed, plaintiff began to feel pain in his neck, right shoulder and arm, and he so notified the reception desk.

Michael Lynch (Lynch), Fairmont's director of loss prevention, went to plaintiff's room to investigate the incident. Lynch testified at trial that plaintiff told him what had happened and pointed out to him that he (plaintiff) had removed a light bulb from the vanity socket and put it on the counter. Lynch observed the empty socket on the left light strip and saw the light bulb on the counter. He then reinserted the light bulb into the socket, and it sparked and broke in his hand, without electric shock. After that, Suzanne Rosales Weber (Rosales Weber), one of Fairmont's maintenance engineers, was called to examine the vanity light.

Rosales Weber testified that she first checked the circuit breaker and determined that it was tripped. She then checked the socket and determined that the wire leading into it had become loose and was touching the metal housing of the fixture, which caused a short circuit when plaintiff activated the switch. She covered the wire with electrical tape, as a temporary repair, to prevent another short circuit.[2]

Later in the day, plaintiff went to the Northwestern Memorial Hospital emergency room to seek medical attention. Plaintiff returned to Germany on May 9, 1999. Upon his return to Germany, he was treated by several doctors for an injury to his right shoulder and arm. Plaintiff offered expert medical testimony that his injury was produced partly by the mechanical force of striking the door frame and partly by the electrical current, in combination; however, there is no scientific formula to permit plaintiff to attribute what part of the injury was due to which cause. The injury may produce continuing pain and is permanent. It includes stiffness and reduced movement in plaintiff's right shoulder and arm, and prevents him from being a pilot. Plaintiff was found unfit to fly and lost his pilot's license in February of 2001.

Plaintiff's theory at trial was that Fairmont and Maron were negligent in maintaining the vanity light fixture and the electrical wiring in plaintiff's guest room and that, because of their negligence, a short circuit occurred in the vanity light fixture. This short circuit caused the vanity light to spark and, at the same time, resulted in plaintiff receiving an electric shock at the light switch. Because of this, plaintiff jumped or moved or fell backward and hit the bathroom door frame, resulting in his injury. Plaintiff, however, presented no electri-

---

[2]The socket was repaired on the following day by Schnur and McKenna.

cal experts to establish the feasibility of his theory. Rather, plaintiff called to testify at trial present and former employees of the Fairmont. Their testimony follows.

Mike Ruhl (Ruhl), Fairmont's chief engineer at the time of the incident, testified that he was aware that the vanity light sockets would short out on occasion[3]; however, this occurrence was not common. In such a situation where a "hot wire" was exposed and touched the housing of the fixture, the condition was a "dead short"—the circuit breaker[4] would trip, but nothing else would occur. He further testified that there is no way to predict whether a short circuit will occur in any lighting fixture, even if he opened up a light fixture and visually inspected it inside. Ruhl also explained the preventive maintenance program at Fairmont. With respect to the vanity lights and switches, a member of the engineering staff is to turn the lights on and make sure they work. He also testified that it is a common practice in any well-maintained building to test larger circuit breaker panels and larger pieces of electrical equipment with a thermal scan.[5] This scan could show if there is a loose connection or another abnormality in the equipment. Ruhl stated that Fairmont contracts with someone to scan its circuit breakers and large pieces of equipment, but not its light fixtures because it is not feasible to do a thermal scan on every light fixture, as there are tens of thousands of them. He further testified that he never heard of anybody else scanning light fixtures.

Damien McKenna, former Fairmont maintenance engineer, similarly testified that, over his career at Fairmont from July of 1994 to July of 2001, the vanity sockets would periodically require changing, and he had repaired about 10 sockets that short-circuited. In his opinion, the sockets would short-circuit because they loosened over time as Fairmont's housekeeping staff changed the light bulbs. When the socket short-circuited, it would blow the circuit breaker. The light would spark, and the housekeeper would call one of the maintenance engineers to come down and fix it. He testified that Schnur was aware that these short circuits would occur. However, McKenna never heard of anyone at Fairmont receiving an electric shock from a vanity fixture or the light switch. He also testified, over Fairmont's hearsay objection, that Schnur had stated that the vanity fixtures were "horse shit."

---

[3]There is no evidence that the vanity light fixture in plaintiff's room had ever shorted on a prior occasion.

[4]Each guest room has its own circuit breaker.

[5]A thermal scanner is a portable unit operated by specially trained technicians.

Rosales Weber similarly testified that she repaired about 10 sockets a year because they short-circuited and that she had discussed this issue with Biagi and Schnur. In her experience, the vanity lights could short if the sockets became loose. She was of the opinion that the reason they became loose was because sometimes the sockets would turn when a housekeeper was screwing in a light bulb. Rosales Weber further testified that a short at the vanity light fixture immediately sends a surge of electricity through the metal switch box inside the wall to the circuit breaker, and the circuit breaker trips and shuts down the electricity beyond its point. Based on her knowledge of maintenance engineering, she did not think that it was possible to get a shock at the switch if the vanity socket shorted. She never heard of anyone getting a shock at the switch[6] and did not consider the vanity lights to be of any danger to the guests. Rosales Weber also testified, however, that it was possible that the switch plate, which was metal, was directly connected with metal screws to the switch box inside the wall.

Biagi testified that in over 14 years of experience at Fairmont, he had never heard of anyone getting a shock at the switch when the vanity lights shorted. When asked whether getting a shock in this manner was possible, he responded, "[the electricity] would usually go back to the breaker or, if not, most of your toggle switches are plastic. I don't know how it would conduct. *** Anything is possible. But I wouldn't see how." He further testified that Schnur was an "outstanding" electrician.

The jury returned a general verdict finding Fairmont solely liable for plaintiff's injury and Maron not liable. In an answer to a special interrogatory, the jury found that Maron, through its agent Schnur, was not negligent. The trial court, thereafter, entered judgment for Maron on Fairmont's contribution claim. Following the entry of judgment on the jury's verdict, Maron moved for summary judgment on Fairmont's indemnification claim, arguing that Fairmont's liability was direct and not vicarious, while Fairmont moved for judgment *n.o.v.* or, in the alternative, for a new trial. The trial court denied Fairmont's motion for judgment *n.o.v.* or, in the alternative, a new trial,

---

[6]Rosales Weber testified that she had been shocked on more than one occasion while performing electrical repairs, but not while working on the vanity lights or switches. She referred to only other kinds of repairs, specifying one instance where she received an electric shock while working on a fan motor "[a]nd there was no cover on the capacitor, and it was still charged," facts which have no bearing on the events giving rise to this cause of action. On no occasion did Rosales Weber suffer any permanent injury from being shocked, and she never made an official report of it or mentioned it to anyone.

and granted Maron's motion for summary judgment. Fairmont now appeals.

On appeal, Fairmont argues that the trial court erred in (1) denying its motion for judgment *n.o.v.* or, in the alternative, a new trial; and (2) granting in part Maron's motion to dismiss the contractual indemnification count, and later granting summary judgment for Maron on that count. With respect to its motion for judgment *n.o.v.*, Fairmont contends that it is entitled to a judgment *n.o.v.* because, under the circumstances of this case, it did not owe plaintiff a duty of care; in the alternative, even if the existence of a duty is found, Fairmont argues that plaintiff failed to carry his burden of proving that Fairmont's conduct was the proximate cause of his injury. With respect to its motion for a new trial, Fairmont argues that it is entitled to a new trial because it was irreparably prejudiced by McKenna's testimony that Schnur said the vanity lights were "horse shit." Lastly, with respect to the contractual indemnification count, Fairmont argues that the indemnification provision of the Fairmont-Maron contract does not violate the Anti-Indemnity Act, and, therefore, Maron is required to indemnify Fairmont for the verdict and all other costs associated with this case.

For the reasons that follow, we reverse the judgment against Fairmont and in favor of plaintiff, and dismiss as moot the appeal from the judgment in favor of Maron and against Fairmont on the issue of indemnification.

## ANALYSIS

■ As a preliminary matter, plaintiff points out that there was no compliance with the Illinois Supreme Court Rule 323(b) "notice of completion" requirement, providing that "[e]ach shorthand reporter who transcribes a report of proceedings shall certify to its accuracy and shall notify all parties that the report of proceedings has been completed and is ready for filing." 166 Ill. 2d R. 323(b). Plaintiff further argues that there are other omissions, in that the record on appeal is missing the following portions of the transcript of the proceedings: (1) all closing arguments at trial; (2) all arguments regarding Fairmont's posttrial motion; and (3) all exhibits showing photos of the hotel room, the vanity lights and the switch. Given these omissions, plaintiff urges that this court may presume that the trial court's ruling on Fairmont's motion had sufficient legal and factual basis. See *Webster v. Hartman*, 195 Ill. 2d 426, 432, 749 N.E.2d 958, 962 (2001); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984) (in the absence of a sufficiently complete record on appeal, the reviewing court may presume that the trial court's order was in

conformity with the law and had a sufficient factual basis; any doubts arising due to the incompleteness of the record will be resolved against the appellant). However, with respect to plaintiff's Rule 323(b) argument, plaintiff admits that sections of the report proceedings were separately certified as correct by the reporters who transcribed them. Moreover, plaintiff concedes that "[t]his is a makeweight point, since all the verbal evidence is in the record." Accordingly, despite these alleged omissions, we find the record sufficient to dispose of the matter before us on its merits. See *State Farm Insurance Co. v. Jacquez*, 322 Ill. App. 3d 652, 656, 749 N.E.2d 462, 465 (2001).

In order to state a cause of action for negligence, the plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury which proximately resulted from that breach. *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 25, 594 N.E.2d 313, 318 (1992). It is well established that where a plaintiff has obtained recovery against a defendant based on negligence, a judgment notwithstanding the verdict is required if the defendant did not owe the plaintiff a duty. *Washington v. City of Chicago*, 188 Ill. 2d 235, 238-39, 720 N.E.2d 1030, 1032 (1999). A motion for judgment notwithstanding the verdict presents a question of law, which we review *de novo*. *Townsend v. University of Chicago Hospitals*, 318 Ill. App. 3d 406, 409, 741 N.E.2d 1055, 1057 (2000). If the evidence, viewed in a light most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict could stand, a judgment notwithstanding the verdict should be granted. *Maple v. Gustafson*, 151 Ill. 2d 445, 453, 603 N.E.2d 508, 512 (1992); *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967).

Our supreme court has embraced Dean Prosser's view of the duty aspect in a negligence case:

> "Necessary to any recovery based on the theory of common law negligence is the existence of a duty or an obligation requiring one to conform to a certain standard of conduct for the protection of another against an unreasonable risk. Whether under the facts of a case such a relationship exists between two parties as to require that a legal obligation be imposed upon one for the benefit of another is a question of law to be determined by the court." *Barnes v. Washington*, 56 Ill. 2d 22, 26, 305 N.E.2d 535, 538 (1973), citing W. Prosser, Torts § 37 (4th ed. 1971).

The Illinois Supreme Court has recognized that " ' "duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is

entitled to protection.' " *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 527, 513 N.E.2d 387, 396 (1987), quoting W. Keeton, Prosser & Keeton on Torts § 53, at 358 (5th ed. 1984). In premises liability cases, including those where a guest suffered injury while on hotel premises, Illinois courts determine whether a duty of care exists by considering the common law duty factors of (1) reasonable foreseeability of the injury; (2) likelihood of the injury; (3) magnitude of the burden on the defendant of guarding against the injury; and (4) consequences of placing the burden on the defendant.[7] *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 452-53, 605 N.E.2d 493, 501 (1992); *Carroll v. Faust*, 311 Ill. App. 3d 679, 685, 725 N.E.2d 764, 768-69 (2000). The innkeeper-guest relationship imposes on an innkeeper a duty to exercise "ordinary" care in protecting its guests from injury, and does not impose a "heightened" duty to protect guests generally from danger. See *Estate of Ruppel v. Hyeon Jin, Inc.*, 272 Ill. App. 3d 527, 531, 650 N.E.2d 645, 647 (1995).

Plaintiff argues on appeal that the trial court properly denied Fairmont's motion for judgment notwithstanding the verdict because the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to plaintiff, could have reasonably permitted the jury and the trial judge to find that: Fairmont was negligent in maintaining the vanity light fixture in plaintiff's room; the short circuit, which occurred due to Fairmont's negligence, caused the vanity lights to suddenly flash brightly and, at the same time, caused plaintiff to receive an electric shock at the light switch; and the electric shock or the sudden flash of bright light reflecting in the vanity mirror in a dark room, or a combination of both, caused plaintiff to be startled and react by jumping or moving or falling backward and hitting the door frame, resulting in his injury.

Fairmont, on appeal, argues that, under the circumstances of this case, it was not negligent because the scope of its duty did not extend

---

[7]Until recently, a duty of care was imposed by the Premises Liability Act (Act) (740 ILCS 130/2 (West 2002)) on owners or occupiers of land to exercise "reasonable care under the circumstances" toward persons lawfully on the property. In 1997, however, the Illinois Supreme Court invalidated tort reform legislation of Public Act 89—7 (Pub. Act 89—7, eff. March 9, 1995), and with it, by reference, the amended Premises Liability Act, which was passed as part of Public Act 89—7. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 378, 689 N.E.2d 1057, 1064 (1997). The Act, however, was not invalidated because of any constitutional infirmity, but because it was found to be not severable from the unconstitutional portions of Public Act 89—7. *Best*, 179 Ill. 2d at 378, 689 N.E.2d at 1064; *Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033, 1039 n.1, 735 N.E.2d 662, 667 n.1 (2000).

to protecting plaintiff from being shocked at the light switch since it could not reasonably foresee plaintiff's injury. Specifically, Fairmont contends that it could not reasonably anticipate that an electric short in the vanity light socket would pose a danger of an electrical shock at the light switch. It is Fairmont's position that plaintiff's injury resulted from "freakish, bizarre or fantastic circumstances," and, therefore, "no duty is present and no negligence claim can be asserted." *Washington*, 188 Ill. 2d at 240, 720 N.E.2d at 1033. To this, plaintiff responds that his injury was foreseeable because the evidence showed that Fairmont's maintenance engineers were aware that the vanity lights periodically short-circuited and needed to have the shorted socket replaced. Plaintiff points out that all of Fairmont's guest rooms had the same fixtures as plaintiff's room and that his vanity light short-circuited in the same manner. Fairmont does concede that it was aware of the occurrences of the vanity lights short-circuiting, but points out that the evidence showed that it had no knowledge of anyone at Fairmont ever being shocked at the light switch, nor did it have reason to believe that such a short circuit in the socket could pose a danger of an electrical shock at the light switch, especially because the light switch is designed to complete an electrical circuit without exposing the user to an electrical current, and that, in the event of a short circuit, a circuit breaker trips and shuts down the electricity beyond its point.

■ We begin our discussion by noting that reasonable foreseeability is an elusive concept, but not so that it ignores common sense. *St. Paul Insurance Co. of Illinois v. Estate of Venute*, 275 Ill. App. 3d 432, 436, 656 N.E.2d 113, 117 (1995). It has been explained in terms that "[t]he creation of a legal duty requires more than a mere possibility of occurrence. *** 'No [one] can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.' " *Cunis v. Brennan*, 56 Ill. 2d 372, 376, 308 N.E.2d 617, 619 (1974), quoting W. Prosser, Torts § 31, at 146 (4th ed. 1971). In other words, " '[a]n occurrence is reasonably foreseeable if a reasonably prudent person could have foreseen as likely the events which did transpire. If those events are "highly extraordinary" or "tragically bizarre" or "unique" then the occurrence is not reasonably foreseeable.' " *Zakoff v. Chicago Transit Authority*, 336 Ill. App. 3d 415, 423, 782 N.E.2d 873, 879 (2002), quoting *Michalak v. County of La Salle*, 121 Ill. App. 3d 574, 576, 459 N.E.2d 1131, 1132 (1984). Fairmont argues that the evidence, viewed in the light most favorable to the plaintiff, nevertheless established that plaintiff's injury was not reasonably foreseeable; rather, it was "highly extraordinary" or "tragically bizarre" or "unique."

■ Plaintiff contends that there is no controversy in this case over his being a foreseeable plaintiff because he was a guest at Fairmont and Fairmont owed him the duty to exercise ordinary care to see that the property was reasonably safe for the use of those lawfully on the property. Plaintiff, however, overextends the meaning of the duty of ordinary care. A duty of ordinary care is not absolute: "[W]hen a person has no reason to suspect injury, he is not required to look for it [citation]. *** [L]iability under the rules of ordinary negligence requires some knowledge on the part of the defendant, actual or constructive, of the possibility of the danger complained of." *Prater v. Veach*, 35 Ill. App. 2d 61, 65, 181 N.E.2d 739, 741 (1962). In *Prater*, a two-year-old girl was electrocuted when she came into contact with an air conditioning unit located on a concrete patio behind the defendant's house. *Prater*, 35 Ill. App. 2d at 63, 181 N.E.2d at 741. Defendant had permitted the child to play on his premises, and consequently, he owed her, as his invitee, a duty to exercise reasonable care to make a natural or artificial condition on his premises reasonably safe, or to warn of the condition and the risk involved, but only if he had knowledge, actual or constructive, of the condition and realized that it involved an unreasonable risk to an invitee. *Prater*, 35 Ill. App. 2d at 63-65, 181 N.E.2d at 741. The court found the defendant not liable because he had no reason to suspect that the air conditioning equipment was improperly installed, and therefore, he could not foresee the harm to the child. *Prater*, 35 Ill. App. 2d at 65, 181 N.E.2d at 741.

We note that the facts of the instant case are somewhat different from those in *Prater* in a sense that, in this case, there was testimony presented at trial of prior experience at Fairmont of the vanity lights short-circuiting. Even if this testimony would be sufficient to establish that the possibility of the short circuit was reasonably foreseeable, should this knowledge have given Fairmont a reason to anticipate a danger of an electrical shock at the light switch? As we shall fully discuss below, the presence of a short circuit in the vanity light fixture does not become a sufficient predicate for Fairmont to anticipate the danger of an electric shock at the light switch, for the reason that the risk of such a shock, under the circumstances of this case, is, at best, anomalous.

Plaintiff argues that Fairmont should have reasonably foreseen that danger. In support of this argument, plaintiff cites *Lee*, 152 Ill. 2d at 452, 605 N.E.2d at 501, apparently for the proposition that Illinois courts construe foreseeability very liberally, and, thus, his injuries were foreseeable. Plaintiff seems to interpret *Lee* to state that it was foreseeable to the Chicago Transit Authority (CTA) that a man would urinate on the third (electric) rail of the "El" railroad tracks, and that

electricity would travel up his stream of urine, killing him. Plaintiff is mistaken in his interpretation of the facts involved in *Lee*. Rather, in *Lee*, the plaintiff's decedent, while heavily intoxicated, had apparently entered the CTA railway right-of-way in order to urinate, and in the process of doing so, he came into contact with the third rail, suffering fatal injuries. *Lee*, 152 Ill. 2d at 443, 605 N.E.2d at 497. We will not speculate on the exact nature of his contact with the third rail. It suffices to say that *Lee* contains no mention, let alone discussion, of the foreseeability of electricity traveling up the stream of urine and killing the plaintiff's decedent. Rather, the court departed from the traditional rule regarding duty owed to trespassers and imposed on the CTA a duty of ordinary care to properly warn of the third rail because there were sufficient facts to support a finding that the CTA had reason to know of the presence of pedestrians upon its tracks and had reason to believe that a trespasser would not discover the danger of the third rail and suffer injury as a result. *Lee*, 152 Ill. 2d at 451-52, 605 N.E.2d at 501.

We observe that the *Lee* analogy is also inappropriate because the instant case does not involve a duty to warn of a dangerous condition; rather, it is about maintaining the premises in a reasonably safe condition for the benefit of the hotel's guests. Plaintiff does not directly address Fairmont's argument that it had no reason to know that plaintiff's guest room was unsafe because Fairmont had no reason to believe that a short circuit could pose a danger of an electric shock at the light switch. Rather, plaintiff appears to argue that the issue of the foreseeability of his injury should be decided by the jury, as a factual matter in its proximate cause determination (*Nelson v. Commonwealth Edison Co.*, 124 Ill. App. 3d 655, 465 N.E.2d 513 (1984)), and that foreseeability of an injury "in actuality plays little part in a resolution of the duty issue" (*Zimmermann v. Netemeyer*, 122 Ill. App. 3d 1042, 1047, 462 N.E.2d 502, 506 (1984)).

In *Nelson*, a 10-year-old boy received serious electrical burns while playing in a public playground when a spool of copper wire held by him came near or in contact with high voltage, uninsulated, power lines that ran over the middle of the playground at a height of approximately 30 feet. *Nelson*, 124 Ill. App. 3d at 656, 465 N.E.2d at 514. The trial judge dismissed the plaintiff's complaint for failing to state a cause of action because he concluded that the boy's injury was not reasonably foreseeable. *Nelson*, 124 Ill. App. 3d at 657, 465 N.E.2d at 515. On appeal, the plaintiff, relying on *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 117 N.E.2d 74 (1954), and *Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 50 N.E.2d 497 (1943), argued that Illinois courts regarded foreseeability solely as a factual issue to be determined by a jury as

part of its proximate cause decision, and that foreseeability is an appropriate consideration for a court, as a matter of law, only as a means of precluding liability where the injury was too remote or not reasonably anticipated by the ordinary person. *Nelson,* 124 Ill. App. 3d at 657-58, 465 N.E.2d at 515-16. The defendants counterargued that foreseeability is an element of the court's duty determination as well as an element of the jury's proximate cause decision. *Nelson,* 124 Ill. App. 3d at 658-59, 465 N.E.2d at 516. The defendants, relying on *Cunis,* 56 Ill. 2d at 374, and *Mieher v. Brown,* 54 Ill. 2d 539, 301 N.E.2d 307 (1973), further argued that the determination of the existence and scope of duty, *i.e.,* whether the parties stood in such a relationship to one another that the law imposed a duty upon one for the other's benefit, is a legal issue that should be resolved by the court, with the focus on the nature and limits of the defendants' obligations. *Nelson,* 124 Ill. App. 3d at 658-59, 465 N.E.2d at 516.

The court acknowledged the contradictory nature of Illinois precedent regarding the proper role of foreseeability in negligence claims,[8] but held that the more recent precedent (at that time) indicated that the Illinois courts were treating foreseeability as a factor in both the court's duty determination and the jury's proximate cause determination. *Nelson,* 124 Ill. App. 3d at 659, 465 N.E.2d at 516-17. The court also perceived *Cunis* to be a "disruptive influence" on the body of negligence law, in that the *Cunis* court "assimilated the factor of 'reasonable foreseeability' into its determination of legal

---

[8]The controversy regarding the proper role of foreseeability in negligence claims was partly due to the fact that, as the law of foreseeability was evolving, some Illinois cases were (in different ways) influenced by the view of foreseeability as expressed by Professor Leon Green, who wrote:

> "[H]owever valuable the foreseeability formula may be in aiding a jury or judge to reach a decision on the negligence issue, it is altogether inadequate for use by the judge as a basis of determining the duty issue and its scope. The duty issue, being one of law, is broad in its implication; the negligence issue is confined to the particular case and has no implications for other cases. There are many factors other than foreseeability that may condition a judge's imposing or not imposing a duty in the particular case, but the only factors for the jury to consider in determining the negligence issue are expressed in the foreseeability formula." L. Green, *Foreseeability in Negligence Law,* 61 Colum. L. Rev. 1401, 1417-18 (1961), quoted in *Zimmermann v. Netemeyer,* 122 Ill. App. 3d 1042, 1048, 462 N.E.2d 502, 507 (1984), *Cunis v. Brennan,* 56 Ill. 2d 372, 375, 308 N.E.2d 617, 618-19 (1974), and *Mieher v. Brown,* 54 Ill. 2d 539, 544, 301 N.E.2d 307, 309-10 (1973).

duty, thereby permitting courts to dismiss, as a matter of law, negligence complaints arising out of occurrences which were 'freakish or fantastic' or 'tragically bizarre.' [Citation.] From an analytical perspective, the *Cunis* decision seems to meld into one what had previously appeared to be two distinct problems in negligence theory—the unforeseen plaintiff problem and the problem of the foreseeable injury resulting from unforeseen means." *Nelson*, 124 Ill. App. 3d at 659-60, 465 N.E.2d at 517.

In the instant case, plaintiff seems to argue that we should adopt the *Nelson* approach regarding foreseeability. The *Nelson* court articulated this approach as follows:

> "While foreseeability is *** a proper matter for a court to consider in making its duty determination, the sounder approach would be to recall that the duty issue is broad in its implication and it is only the jury's negligence determination which need be strictly confined to the facts of the particular case. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 544[, 301 N.E.2d 307], citing Green, *Foreseeability in Negligence Law*, 61 Colum. L. Rev. 1401, 1417-18 (1961).) In other words, foreseeability is a determinative consideration only where a particular occurrence is so extreme that, as a policy decision, it would be unwise to require defendant to guard against it. In the majority of cases, where varying inferences are possible from the facts, a court should permit the jury to decide the foreseeability issue, including the foreseeability of the particular cause and effect of plaintiff's injury, as a factual matter in its proximate cause determination. (*Cf. Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 7-8[, 364 N.E.2d 423]; *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 12-13[, 310 N.E.2d 1].) This approach would strike a sound balance between inviting trial courts to invade the jury's province on what is essentially a factual matter, and permitting a sympathetic jury to find an event foreseeable in even the most bizarre cases." *Nelson*, 124 Ill. App. 3d at 653, 465 N.E.2d at 519.

We note that *Nelson* is similar to the Andrews view of the Cardozo-Andrews debate regarding the role of foreseeability in negligence law (*Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928)), with Chief Justice Cardozo writing for the majority that absent a foreseeable injury to the plaintiff there was no duty, and absent duty there was no negligence, and Justice Andrews writing in the dissenting opinion that duty does not require a foreseeable plaintiff; rather, all persons have a duty of care to the world at large, and that if foreseeability has a place as a limitation on an individual's liability for damages, it is in the context of proximate cause. However, *Nelson* has not been widely followed in Illinois. See *Washington*, 188 Ill. 2d at 240-42, 720 N.E.2d at 1033-34 (using the *Cunis* (Cardozo) approach to foresee-

ability as being one of the factors in the court's duty analysis and deciding, as a matter of law that it was not foreseeable that an operator of a fire department truck which was responding to an emergency call would leave the roadway and drive at a fast speed on a raised median separating the lanes of traffic, and, therefore, the city did not owe the plaintiff a duty to construct the median in a manner to make it safe for such use).

Similarly, plaintiff's reliance on *Zimmermann* is misplaced—the court did not suggest that a duty be imposed on the defendant where the injury to the plaintiff was not foreseeable. See also *Renslow v. Mennonite Hospital*, 67 Ill. 2d 348, 354-55, 367 N.E.2d 1250, 1253-54 (1977) (noting that duty and foreseeability are not identical in scope: although no legal duty arises unless harm is reasonably foreseeable, there are instances of foreseeable harm, where, as a matter of policy, no duty arises). Rather, the court was skeptical of the way the "foreseeability of harm" enters into the determination of whether a duty exists:

> "[T]he term 'foreseeability of harm' is in actuality vague and uncertain; it furnishes no standards or guidelines of any sort for a court to follow in determining the existence of a duty. Because the jury determines whether a negligent breach of duty has occurred by applying the test of foreseeability, the term 'foreseeability of harm' has a factual orientation. This factual orientation renders it ineffective and unreliable for use by a court that must resolve the duty question as a matter of law. The principal utility of the phrase 'foreseeability of harm' seems to be merely that of a vehicle for the pronouncement of the court's decision on the duty issue after that decision has been reached on the basis of policy considerations, the true basis of all duty decisions by Illinois courts." *Zimmermann*, 122 Ill. App. 3d at 1048-49, 462 N.E.2d at 507.

Rather, the court felt that duty is most appropriately expressed primarily in terms of public policy, which "is a reflection of the needs, the wishes and the tolerances of society as determined by the court as it faces the duty issue." *Zimmermann*, 122 Ill. App. 3d at 1051, 462 N.E.2d at 509.

Over the years, the ambiguity in Illinois precedent regarding the proper role of foreseeability in a negligence determination, to which the *Nelson* court was referring, has disappeared:

> "The legal principles governing our review are well established.
> ***
> *Whether a duty exists is a question of law for the court to decide.* In resolving whether a duty exists, a court must determine whether there is a relationship between the parties requiring that a legal obligation be imposed upon one for the benefit of the other. [Cita-

tion.] *The factors relevant to the courts' imposition of a duty include the reasonable foreseeability of injury*, the likelihood of such injury, the magnitude of guarding against the injury, and the consequences of placing that burden on the defendant." (Emphasis added.) *Washington*, 188 Ill. 2d at 238-39, 720 N.E.2d at 1032-33.

Accord *American National Bank & Trust Co.*, 149 Ill. 2d at 26, 594 N.E.2d at 318; *Lee*, 152 Ill. 2d at 446, 452-53, 605 N.E.2d at 498, 501. Accordingly, we must decide, as a matter of law, whether plaintiff's injury was foreseeable, as a part of our duty analysis in the instant case.

■ Neither plaintiff's nor Fairmont's brief offers us much guidance in determining whether it was reasonably foreseeable to Fairmont that a short circuit in the vanity light socket could pose a danger of an electric shock to plaintiff at the light switch. Foreseeability is to be judged by whether it was "objectively reasonable" to expect an injury to occur and not whether an injury might conceivably occur. *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 466, 343 N.E.2d 465, 471 (1976) (no duty to warn of the danger of uninsulated power lines because it is not objectively reasonable to expect an ordinarily intelligent and experienced adult to bring a conductor of electricity close to the electric lines). In Illinois, the vast majority of the cases involving injuries from electricity are factually similar to *Genaust*, *Nelson*, and *Lee*, and are, therefore, of limited utility to this court in determining foreseeability in the instant case. This is so because the facts in this case do not involve injury from a high voltage power line which is clearly visible to those on the premises, or an electric rail, the danger of which was known to the possessor of the premises and where the possessor had reason to believe that a trespasser would not discover the danger. Rather, in this case, plaintiff charges Fairmont with the general knowledge of the dangers of electricity and argues that foreseeability of an injury stems from that knowledge, combined with Fairmont's knowledge that its vanity lights would sporadically short-circuit.

We do not believe that plaintiff's position is consistent with the Illinois law of foreseeability. Foreseeability cannot be based on the general knowledge of the dangers of electricity alone. See *Prater*, 35 Ill. App. 2d at 64-65, 181 N.E.2d at 741; *Genaust*, 62 Ill. 2d at 466, 343 N.E.2d at 471. Some additional quantum of knowledge tipping the scales in favor of the expectation of an injury is required. See *Genaust*, 62 Ill. 2d at 466, 343 N.E.2d at 471. This case, therefore, requires us to determine, as a matter of law, whether Fairmont's additional knowledge that its vanity lights would sporadically short-circuit was sufficient to meet the "objectively reasonable" test of foreseeability.

We do not believe that it would have been reasonable for Fairmont to anticipate the danger of an electric shock to plaintiff at the light switch. As previously stated, in determining foreseeability, the focus is on the defendant—how much it knew or should have known of the possibility of the injury to the plaintiff. In this case, the testimony of Fairmont's employees established that they did not have any reason to anticipate that plaintiff would receive an electric shock at the light switch. Specifically, Biagi, Fairmont's director of engineering, when asked if such a shock was possible, testified that "[the electricity] would usually go back to the breaker or, if not, most of your toggle switches are plastic. I don't know how it would conduct. *** *Anything is possible. But I wouldn't see how*." Similarly, Ruhl, Fairmont's chief engineer at the time of the incident, testified that when the vanity lights short-circuited, the circuit breaker would trip, but nothing else would occur. Rosales Weber, Fairmont's maintenance engineer at the time of the incident, did not think, based on her knowledge of maintenance engineering, that it was possible to get a shock at the switch if the vanity socket shorted.

Furthermore, plaintiff presented no testimony, expert or lay, to help establish that Fairmont should have reasonably anticipated the possibility of electricity traveling to the light switch and electrifying the switch plate, nor did he present expert testimony establishing the causal relationship between the short circuit due to a loose wire in the vanity socket and the electric shock at the switch, nor did he present evidence that the light switch in question was defective or improperly installed or maintained, nor did he present evidence of anyone at Fairmont ever being shocked at the light switch, including other occurrences when the vanity lights short-circuited. Consequently, the electric shock to plaintiff was not objectively reasonably foreseeable to Fairmont.

Plaintiff contends, however, that even if the electric shock was not reasonably foreseeable, liability could rest solely on the bright flash of light which resulted from the short circuit and caused his injury. He is asking us to assume that his "startle" reaction was induced by the flash of the light bulb *without regard to any electric shock*. This contention is untenable insofar as it is not supported by the evidence presented, including plaintiff's own testimony, where he stated that he was startled when he sustained an electric shock *and* saw a bright flash of light. There is no testimony by plaintiff that he was startled simply by the flash. Moreover, plaintiff presented medical testimony that his injury was produced by a combination of the mechanical force of striking the door frame and by the electrical current, but there is no scientific formula to permit plaintiff to attribute what part of the injury was due to which cause.

Similarly, plaintiff's reliance on *Mangan v. F.C. Pilgrim & Co.*, 32 Ill. App. 3d 563, 336 N.E.2d 374 (1975), is inapposite. In *Mangan*, an 83-year-old tenant of defendant's building fell and was injured when she opened her oven door and a mouse jumped out. *Mangan*, 32 Ill. App. 3d at 565-66, 336 N.E.2d at 377. The court found that "[t]he presence of the rodents [on the premises] gave rise to a variety of reasonably foreseeable risks of harm to occupants of visitors in the building. The spread of disease or bites might be a couple of commonly foreseeable risks. But it is not uncommon of any woman, let alone an 83-year-old woman living alone, to be startled or frightened by the unexpected appearance of a rodent, especially as revealed by the circumstances of this case." *Mangan*, 32 Ill. App. 3d at 570, 336 N.E.2d at 380. We observe that the *Mangan* view of foreseeability should not control in the instant case. There are significant distinctions between *Mangan* and the instant case: in *Mangan* the breach of the applicable duty of care was established through the violation of the housing code prohibiting rodent infestation, as evidenced by the presence of mice on the premises. *Mangan*, 32 Ill. App. 3d at 570-71, 336 N.E.2d at 380-81. However, no such statutory or common law duty violation is evidenced by the burning out of a light bulb or an occasional short circuit.

It is also common knowledge that light bulbs do burn out quite frequently, with or without a bright flash, as might be the case where there is a short circuit; that is why a prudent innkeeper has plenty of replacement light bulbs on hand. Does it mean that it is *objectively reasonably* foreseeable, as required under the test of duty, that a hotel guest would be startled by the bright flash of light from a bathroom light fixture and react in a way that could result in injury? Such a view of foreseeability is likely to lead to absurd results. This court is exceedingly uneasy with the idea of charging the hotel industry with the duty to prevent light bulbs from burning out when hotel guests are present because of the possibility that the bulb might flash and startle the guest into injuring him- or herself. Illinois courts have long adhered to Dean Prosser's view that " 'liability must stop somewhere short of the freakish and the fantastic.' " *Mieher*, 54 Ill. 2d at 545, 301 N.E.2d at 310, quoting W. Prosser, *Palsgraf Revisited*, 52 Mich. L. Rev. 1, 27 (1953).

This is especially true in the instant case because even if we were going to charge Fairmont with liability for an injury resulting from a bright flash of the light bulb, plaintiff did not, as discussed above, produce any expert testimony of his own. As a result, there was no expert testimony establishing the hotel industry's custom regarding maintenance of similar light fixtures or reasonable means of preventing short circuits in light fixtures from happening. On this point, we

agree with Fairmont's argument that requiring it to take everything apart to check for loose wires is unreasonable, especially considering that Ruhl, Fairmont's chief engineer at the time of the incident, testified that there is no way to predict whether a short circuit will occur in any lighting fixture, even if he opened up a light fixture and visually inspected it inside. He also stated that Fairmont tests its vanity lights and switches by having a member of the engineering staff turn the lights on and make sure they work, and that it is not feasible to do a thermal scan on every light fixture, as there are tens of thousands of them. Ruhl also testified that he never heard of anybody else scanning light fixtures.

■ In the absence of a clear and efficient rule for imposing a duty on business owners without exposing them to excessive liability (see *Largosa v. Ford Motor Co.*, 303 Ill. App. 3d 751, 757, 708 N.E.2d 1219, 1223 (1999)), we hold that, under the circumstances of this case, Fairmont did not owe plaintiff a duty of care, and the trial court erred in denying Fairmont's motion for a judgment notwithstanding the verdict. In light of our disposition of this appeal, we need not address Fairmont's other argument, whether it is entitled to a new trial, because it was irreparably prejudiced by McKenna's testimony that Schnur had stated that the vanity lights were "horse shit."

## CONCLUSION

For the reasons set forth above, the judgment against Fairmont and in favor of plaintiff is reversed. Correspondingly, the appeal from the judgment in favor of Maron and against Fairmont on the issue of indemnification is moot and, therefore, dismissed.

Reversed in part; dismissed in part.

O'MALLEY, P.J., and McBRIDE, J., concur.